## THE HENRIETTA COAL COMPANY

*v.*

## FRANK MARTIN.

*Opinion filed April 17, 1906—Rehearing denied June 7, 1906.*

1. MINES—*employment of a qualified examiner does not relieve mine owner from liability.* Employment, by a mine owner or operator, of a manager and examiner holding certificates from the State mining board does not shift his responsibility so as to relieve him from liability for the willful failure of the mine manager or examiner to observe the provisions of the statute, even in cases where he has no actual notice of such delinquencies.

2. SAME—*mine manager and examiner are vice-principals of the operator.* A mine manager and mine examiner are vice-principals of the operator of the mine, and perform for the latter certain executive duties which the law does not permit the operator to delegate to others so as to relieve himself from liability for the willful violation of the statute, and the fact that such employees hold certificates of competency from the State mining board does not protect the operator.

3. SAME—*when record made by mine examiner does not comply with the statute.* A record made by a mine examiner by dating and signing an old printed form, evidently printed with a view to making *pro forma* records under some former law instead of section 18 of the present Mining act, and which merely states that the examiner has examined the mine and found it free from dangerous gases, the air-current circulating properly and the entries in safe condition, does not comply with the statute, and constitutes a willful violation thereof.

4. SAME—*what should be stated in examiner's record.* To comply with section 18 of the Mining act a mine examiner's record should show that he has examined the air-courses and show the direction of the current; that he has inspected all places where men are to pass or work, referring to each entry or room by sufficient description; should note recent falls, gas accumulations or obstructions and the location of each, together with any facts of importance relating to his examination of recent falls or old gobs, and should state where, if at all, he has placed conspicuous marks showing dangerous conditions.

5. SAME—*when evidence of demand for props is not admissible.* Evidence that a miner ordered props from a mule driver is not admissible, in the absence of proof that the driver gave the order to

the mine manager or that it was the duty of the latter to make inquiry of the driver as to such orders; but its admission is not reversible error where the jury are instructed that the failure to furnish props was not a ground of recovery unless the plaintiff had shown, by a preponderance of the evidence, that he demanded the props of the mine manager.

6. INSTRUCTIONS—*when modification of instruction is not error.* An instruction stating that the jury, in weighing the testimony of the plaintiff and of another witness who was injured at the same time as the plaintiff and had a suit pending, might take into consideration their interest in the suit, is not improperly modified by adding that the jury had the right to weigh such testimony "by the same rules applied to the testimony of all other witnesses."

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. CHARLES T. MOORE, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the Fourth District affirming a judgment of the circuit court of Madison county in favor of appellee, against appellant, for $8500, in a suit for personal injuries.

On October 7, 1903, Martin was working as a miner in the mine of appellant, and while loading coal in a car a large piece of clod fell upon him, twisting or wrenching his spine so that he was paralyzed from the waist line down, and otherwise injuring him. It appears from evidence offered in his behalf that he and John Zak, Jr., were working together, as partners, at the face of the coal in an entry which was twenty-two or twenty-three feet wide. They were at a distance of about three hundred feet from the shaft. For sixty or seventy feet from the face of the coal, back along the entry, the roof was drummy. There was a layer of clod between the coal and the rock. When the coal was taken out this clod would adhere to the roof for a day or two and then would begin falling down. This was a condition prevailing in that part of the mine and readily observable by any person with even a slight knowledge of mining. To prevent the clod

falling it was necessary to put in props as the entry advanced. On the morning of the day on which Martin was injured he told the mine manager, Grabruck, that he needed props. Four were then sent in. Two of them were unfit to use. The other two were put up by Martin, but they were not sufficient in number. About half an hour before the accident the manager appeared at the place where Martin and Zak were working, and Zak then requested the manager to send in additional props for the joint use of himself and appellee. This request was not complied with, and the clod which caused the injury fell down by reason of insufficient propping.

Appellant employed as examiner a man by the name of Cunningham, who examined the mine on the morning preceding the accident and made a record of the condition of the mine on a printed blank in a book kept for that purpose, which record is in words and figures following:

"Date *10-7-1903.*

"I hereby certify that in accordance with section four (4) of the mining laws I have this day duly examined this mine before the commencement of work therein and find the same free from dangerous gases, the air-current circulating properly, and the entries in safe condition.

D. CUNNINGHAM, *Mine Examiner.*"

Cunningham made this record by writing in the figures after the word "date" and by signing his name. He did not inscribe with chalk on the walls of the working place of appellee and Zak the month and the day of this visit, as required by the statute, and made no marks to indicate danger at that place.

The declaration consisted of three counts. The first charges the defendant with willfully failing and neglecting, after demand made upon it through the mine manager, to provide a sufficient supply of props delivered on the miners' car at the usual place, in suitable lengths and dimensions for securing the roof. The second count charges a willful failure to comply with the requirements of the statute, in that the

appellant did not provide a mine examiner, on October 7, 1903, who made an examination of the mine and a record of its conditions in compliance with the statute, in this: that the mine examiner employed by appellant did not visit said mine and inspect the same, and did not inscribe on the walls of the working places, with chalk, the day and month of his visit, and did not place a conspicuous mark as notice to all men to keep out of dangerous places, and did not at once report his finding to the mine manager when working places were discovered in which recent falls or dangerous conditions existed, and did not prevent anyone from remaining in any part of the mine or entering the mine and working therein except under the direction of the mine manager until all conditions were made safe, and did not make a daily record, on the day aforesaid, of the conditions of the mine, as he found it, in a book kept for that purpose, preserved in the office of appellant, and did not make the said record before Martin was permitted to descend into the mine; and on account of such willful violation of the statute Martin descended into said mine and went to his usual working place, where the roof was loose and apt to fall, all of which could have been determined by defendant had the mine examiner made a proper inspection, by means of which willful failure to comply with the statute plaintiff was injured. The third count is substantially the same as the second. Defendant pleaded the general issue.

At the close of all the evidence appellant moved for a peremptory instruction in its favor, and upon this motion being denied it made a separate motion as to each count in the declaration, asking that the jury be instructed to find it not guilty as to such count. All three of these motions were denied. It assigns as error the refusal of each of these four motions, the admission of improper evidence, the action of the court in passing on the instructions, and the conduct of counsel for appellee in making certain remarks to the jury in his closing argument.

WARNOCK, WILLIAMSON & BURROUGHS, for appellant.

BURTON & WHEELER, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The declaration herein charges willful violations of, and willful failures to comply with, sections 16 and 18 of the "Act to revise the laws in relation to coal mines and subjects relating thereto, and providing for the health and safety of persons employed therein," approved April 18, 1899. (Laws of 1899, p. 300.) Section 16 thereof, in so far as material, provides:

"The mine manager shall instruct employees as to their respective duties, and shall visit and examine the various working places in the mine as often as practicable. He shall always provide a sufficient supply of props, caps and timber delivered on the miners' cars at the usual place when demanded, as nearly as possible, in suitable lengths and dimensions for the securing of the roof by the miners, and it shall be the duty of the miner to properly prop and secure his place with materials provided therefor."

Section 18 is in words and figures following:

"A mine examiner shall be required at all mines. His duty shall be to visit the mine before the men are permitted to enter it, and, first, he shall see that the air-current is traveling in its proper course and in proper quantity. He shall then inspect all places where men are expected to pass or to work, and observe whether there are any recent falls or obstructions in rooms or roadways, or accumulations of gas or other unsafe conditions. He shall especially examine the edges and accessible parts of recent falls and old gobs and air-courses. As evidence of his examination of all working places, he shall inscribe on the walls of each, with chalk, the month and the day of the month of his visit.

"When working places are discovered in which accumulations of gas, or recent falls, or any dangerous conditions

exist, he shall place a conspicuous mark thereat as notice to all men to keep out, and at once report his finding to the mine manager.

"No one shall be allowed to remain in any part of the mine through which gas is being carried into the ventilating current, nor to enter the mine to work therein, except under the direction of the mine manager, until all conditions shall have been made safe.

"The mine examiner shall make a daily record of the conditions of the mine, as he has found it, in a book kept for that purpose, which shall be preserved in the office for the information of the company, the inspector and all other persons interested, and this record shall be made each morning before the miners are permitted to descend into the mine."

Appellant first contends that as it had in its employ and on duty in its mine a certified mine manager and a certified mine examiner at the time appellee was injured, it discharged its duty to appellee in relation to those duties which the statute prescribes shall be performed by the mine manager and mine examiner, and that it is not liable for injuries to the appellee arising from a willful failure of the mine manager to deliver props, or for a willful failure of the mine examiner to perform any duty required of him by the Mining act. This is on the theory that the legislature has prescribed the duties which the operator owes to the miner in so far as examination and management of the mine is concerned, and that all that is required of the operator is that he should employ a manager and an examiner holding certificates from the State mining board, as provided by section 8 of the act in question, and that if he does so, and he has no notice and the circumstances are not such as to put him on notice that the employees are incompetent, negligent or otherwise unfit to perform their duties, he is not liable for any injuries occasioned by any willful violation of the Mining act or any willful failure to comply with its provisions on the part of the examiner or manager.

221—30

In support of this position appellant relies principally upon the case of *Durkin* v. *Kingston Coal Co.* 171 Pa. 193, and the case of *Williams* v. *Thacker Coal and Coke Co.* 44 W. Va. 599. In both Pennsylvania and West Virginia, statutes were enacted which, in their general purposes, were similar to our own. The Pennsylvania statute was determined by the Supreme Court of that State, in the case above cited, to be unconstitutional; and it was also there said that the mining boss or foreman is a fellow-servant of the other employees of the same master, engaged in a common business; that the duty of the mine owner is to employ competent bosses or foremen to direct his operations, and that when he does this he discharges the full measure of his duty to his employees and is not liable for an injury arising from the negligence of the foreman. The West Virginia case follows the Pennsylvania case, and the conclusion there reached is, that as the duties of the manager are prescribed by the statute, and not delegated to him by his employer, and that as he is a fellow-servant of the miner, the master is not responsible for his negligence.

Under the law of this State the mine manager and mine examiner, while in the performance of the duties prescribed by statute, are not fellow-servants of the miner. We think the effect of the statute is to require of the owner of the mine the performance of those duties which the statute prescribes for the mine examiner and the mine manager. The proprietor, if an individual, may himself act in either capacity if he possesses the necessary certificate, otherwise he is required to perform such duties through the manager and through the examiner. They stand for him and are vice-principals, and perform those duties, which he may not delegate to others in such manner as to relieve himself of responsibility. For any willful violation of the statute by either of them, or for any willful failure by either of them to observe its provisions, he is liable. Such has heretofore been assumed to be the law by this court. *Donk Bros. Coal and Coke Co.* v. *Peton,* 192

Ill. 41; *Donk Bros. Coal and Coke Co.* v. *Stroff,* 200 id. 483; *Kellyville Coal Co.* v. *Strine,* 217 id. 516; *Taylor Coal Co.* v. *Dawes,* 200 id. 145.

The fact that the proprietor, if he employs men to act in these capacities, is required to employ those who have obtained the certificate from the State mining board is without significance. The purpose of that provision was, so far as possible, to guard against the possibility of the proprietor employing incompetent, intemperate, negligent or disreputable persons, and not to enable the operator to shift to his employees his responsibility for the management of the mine.

The object of the Mining act, as we gather from its various provisions, is to protect, so far as legislative enactment may, the health and persons of men employed in the mines of the State while they are in the mines. The principal measures prescribed for this purpose require the exercise of greater precaution and care on the part of the mine owner for the safety of the miners than was required by the common law. To hold that he may shift his liability to any person employed by him as examiner or manager who holds the certificate of the State mining board is to lessen his responsibility and defeat in great part the beneficent purposes of the act. To hold him liable for a willful violation of the act or a willful failure to comply with its provisions on the part of his examiner or manager, is to give force and effect to the statute according to the intent of its makers and to prolong the lives and promote the safety and well-being of the miners.

The evidence tends to prove the facts averred by each count of the declaration. We think a willful violation of the law and a willful failure to observe its provisions, as charged by the second and third counts, is shown by undisputed evidence in this: The record made by the examiner on the morning of the day of the accident is not in compliance with the statute. Section 18, *supra,* requires him to make a daily record of the conditions of the mine as he has found it. That

record should state that he has examined the air-courses and show the condition of the air-current, and should show that he has inspected all places where men are expected to pass or to work, referring particularly to each room, entry or other place by number or other appropriate description. If there are any recent falls or obstructions in rooms or road-ways, or accumulations of gas, or other unsafe conditions, the record should so state, giving the location of each. It should show that he has examined old gobs and the edges and accessible parts of recent falls, if there are any, and state any fact of importance in reference thereto. The record should also state where, if at all, he has placed conspicuous marks indicating dangerous conditions and notifying the men to keep out. Such a record would be in compliance with the spirit and letter of section 18, *supra.* The record made by Cunningham, which is above set out, does not indicate an inclination on the part of appellant to comply, in good faith, with the statute. The practice of printing such blank records, ready to be signed by the examiner, is a bad one. The temptation, if the examiner is in haste and the proprietor is anxious to get the men into the mine, is to sign the record as it is printed, when the examiner should himself make a record describing exact conditions. This record, made on a printed blank as it was, does not pretend to be in compliance with the present law. It recites that it is made in accordance with section 4 of the mining laws. That is the section which deals with the engine and boiler house, and a record could not be made in accordance with that section. The blank was evidently printed with a view to making *pro forma* records under an earlier statute which is no longer in force. The record required by the statute was not made, and the men, notwithstanding that fact, were permitted to go into the mine.

Appellant urges, however, that even if the examiner did not comply with the statute in this respect, his failure so to do is not the proximate cause of this accident. The evidence

shows that if the examiner had properly examined the entry where appellee and Zak worked he would have found the roof to be dangerous, and had he made a record to that effect and placed the conspicuous marks required .by the law, it is fair to presume that appellee and Zak would not have been permitted to enter, and would not have entered, (for the purpose of mining,) the place where they worked, until after·the conditions there had been made safe. Cunningham's willful failure to examine the mine in the manner required by law, which the evidence tends to show, and his failure to make a record of the facts which such an examination would have revealed, and his failure to make the marks indicating danger at appellee's working place, contributed directly. to cause the injury to appellee.

The motions for peremptory instructions were properly denied.

Appellee was permitted to prove that when he failed to receive props in sufficient number in response to his demand upon the manager in the morning, he ordered others from the driver. He did not show that the driver communicated this demand to the manager, or that it was the manager's duty to call on the driver to ascertain whether any such request or demand had been made of the driver. It is not like the case of *Donk Bros. Coal and Coke Co.* v. *Pcton, supra,* where the custom of the mine was to write the order for props on a blackboard near the mouth of the shaft. Under such circumstances it would be the duty of the manager to examine the blackboard at frequent intervals to see what orders were written there. Here, if the driver failed to convey the order to the manager the driver would be at fault, and not the manager, and the proprietor could not be held liable for such negligence on the part of the driver. Evidence of the demand made on the driver should not have been admitted. The court instructed the jury, however, that there could be no recovery under the first count unless the plaintiff had shown, by a preponderance of the evidence, that he demanded

the props of the mine manager. Under these circumstances we think that the admission of the evidence in regard to what took place between appellee and the driver was harmless.

Complaint is also made of the refusal of the court to permit the appellee to answer a question calculated to show that he was guilty of contributory negligence. As has been frequently decided, such negligence constitutes no defense to charges of the character contained in this declaration, and the objection to the question was therefore properly sustained.

Appellant also complains that it was not permitted to show, by cross-examination of appellee, that it was the custom of the miners, when they needed props, "to get them around there at any place,—in anybody else's room or any place." As the materiality or relevancy of this testimony so offered is not indicated by counsel this point will not be considered.

Counsel for appellee, in his closing remarks to the jury, traveled beyond the record for the purpose of making an attack upon the credibility of witnesses for appellant. Upon the court sustaining an objection to his remarks he desisted, and while this will not in every case cure the error, we do not think his improper remarks in this instance prejudiced the cause of appellant.

Complaint is made of the fifth and sixth instructions given on the part of appellee. This court has heretofore approved instructions identical with these, and the appellant suggests nothing to lead us to re-examine our reasoning in regard to them.

The fourth instruction requested by appellant advised the jury that in weighing the testimony of the plaintiff they had the right to take into consideration his interest in the result of the suit. The court modified it by adding a clause telling them they had the right to weigh that testimony "by the same rules applied to the testimony of all other witnesses." The witness Zak was injured in the same accident

and had a suit pending to recover for his injuries, and appellant's fifth instruction was to the effect that the jury might consider these facts in determining what credence to give to his testimony. The court modified it in like manner as the fourth. As given, these two instructions stated correct propositions.

Appellant's sixteenth instruction was refused. It would have relieved the defendant of any liability for a willful failure of the mine examiner to observe the provisions of the statute in making the examination of the mine, and for that reason it was objectionable.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*