GEORGE DAVIS, Appellee, *vs.* THE ILLINOIS COLLIERIES
COMPANY, Appellant.

*Opinion filed February 20, 1908.*

1. PLEADING—*question of variance must be raised at the trial.*
That a declaration against a mining company alleges that the so-
called "dust explosion" which injured plaintiff resulted directly
from a blast whereas the proof shows that the first blast generated
gas, that a later one caused this gas to explode, which explosion
was, in turn, aggravated by dust in the air to the extent that it in-
flicted the injury complained of, constitutes a mere variance, which
must be objected to at the trial to be available upon appeal.

2. TRIAL—*when plaintiff's evidence must go to the jury.* Evi-
dence introduced by the plaintiff tending to show that the so-called
"dust explosion" which injured him was an explosion of gases,
which was aggravated by dust permeating the air, andi which, in
consequence of such aggravation, became the proximate cause of
his injury, is not so inconsistent with fixed natural laws that the
truth of such evidence is impossible, and the weight to be given
thereto is a question for the jury.

3. MINES—*a mine examiner stands in relation of vice-principal
to mine owner.* A mine examiner is the vice-principal of the mine
owner, who is not relieved from liability by the fact that he employs
the examiner as required by law and that the examiner reports con-
ditions in the mine as satisfactory; and the examiner's conscious
failure to comply with the statute amounts to a willful violation
thereof by the mine owner, whether he knows of his examiner's
dereliction or not.

4. SAME—*miner's contributory negligence is no defense where
willful violation by mine owner is shown.* That the negligence of'
a shot-firer may have contributed to his injury, which would not,
however, have occurred but for the mine owner's willful violation
of the statute relating to mines, does not defeat a recovery under
the statute.

5. SAME—*an action to recover damages for willful violation of
Mines act is not a suit to recover a penalty.* An action by a miner
for injuries claimed to have resulted from defendant's willful vio-
lation of the Mines act is not an action to recover a penalty, and
the rule relating to the sufficiency of the evidence necessary in an
action to recover a penalty does not apply.

6. APPEALS AND ERRORS—*a party cannot change his position on
appeal.* A defendant to an action by a miner for willful violation
of the Mines act, who seeks upon the trial to have applied to the

issues the rule relating to the sufficiency of the evidence necessary in actions to recover a penalty, cannot, upon appeal, insist that the acts charged against the defendant are made a misdemeanor by the statute, and therefore proof beyond a reasonable doubt is necessary.

7. INSTRUCTIONS—*when inaccuracy of instruction is cured.* Inaccuracy in an instruction for the plaintiff which states the defendant's duty, under the Mines act, to be to have the roadway sprinkled or cleaned if it was "dry and dusty" instead of when "the air becomes charged with dust," as stated in the statute, is cured by an instruction for the defendant stating the duty in the language of the statute.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. R. D. W. HOLDER, Judge, presiding.

This is an appeal by the Illinois Collieries Company from a judgment of the Appellate Court for the Fourth District affirming a judgment of the circuit court of Madison county against appellant, in favor of appellee, recovered in an action on the case for personal injuries. The declaration alleged a willful violation by appellant of clause (g) of section 20, chapter 93, Hurd's Revised Statutes of 1905, resulting in a "dust explosion," causing the injuries complained of, while the appellee was in appellant's employ as a shot-firer. Appellant interposed the general issue. The suit was begun in Bond county, and by agreement of the parties a change of venue was taken to Madison county.

Appellee was employed as a shot-firer in appellant's coal mine at Sorento, Illinois, and had been working in that capacity since September, 1905. From the bottom of the shaft the main entry extended north and was called the north entry, and extending therefrom at regular intervals, several hundred feet apart, were entries running east and west. The accident occurred about six o'clock of the evening of January 25, 1906, in one of these entries known as the third west off the north. This entry was eight feet in

width, and extended west from the main entry approximately twelve hundred feet. East of the head of the entry, at distances of forty and eighty feet, were cross-cuts ten feet in width, at right angles with the entry, leading to the next entry on the south. In the center of the entry was laid a track over which coal was hauled to the main entry in cars with mules, and on either side of the track were piles of broken coal and fire clay, known to the miners as "gob," a foot or a foot and a half in height. The track over which the mules traveled, unless sprinkled frequently, would become dusty, and evidence was offered by the appellee which showed that on the day of the injury this entry was in a dry and dusty condition and that the dust on the track near the head of the entry was from two to three inches deep; that the entry had been in that condition for several weeks and that this fact was known to appellant. On the north side of this entry, and about three feet east of the west end thereof, a cross-cut had been started, which had been driven to a depth of four feet. On the day appellee was injured, when the miners left their work, six shots had been placed in the west end of this entry and in this cross-cut, one of which was on the left rib of the entry, one on the face, one on the bottom on the right rib and the other three in the cross-cut. Two of the latter were bottom shots and the other a top shot. Appellee and a shot-firer named Haveron worked together on the north side of the mine that afternoon. When they reached the head of the west third entry the shots were examined by appellee, and he discovered that one of the shots placed in the cross-cut had not been charged. The hole drilled for this shot was six feet deep and two and a half inches in diameter. The appellee put sixty inches of powder into this hole, tamped it and then lit the fuses attached to the shots in the entry, beginning with the one on the left side, and then lit the three fuses in the cross-cut. After lighting the last fuse he started east in the entry, and had passed the second cross-cut when the

first two shots fired went off within a few seconds of each other and the others exploded shortly after. By the force of the first explosion appellee's light was blown out and the second explosion knocked appellee and Haveron to the ground, and at the same time a sheet of flame shot out from the face of the entry considerably beyond them, by which they were severely burned. Haveron testified that at the time of the explosion the entry was filled with "sparks and flames."

On behalf of appellant, E. F. Grabuck, the manager of the mine, testified that the entry was sprinkled once every week, and that it had been sprinkled by him on Saturday, six days before the accident occurred. G. R. McVey, the mine examiner, testified that he made an examination of the mine on the morning of January 25, 1906, and that he did not consider the entry in a dangerous condition; that he made an entry in his book on that day stating "all roads on the north side sprinkled O. K." Within a few hours after the explosion occurred, the manager, the mine examiner, the superintendent, and Walton Rutledge, one of the State mine inspectors, made an examination of this entry and the place of the explosion, each of whom testified that there had been an explosion of gas generated from the first shot; that this explosion was caused by shooting the charges in the position that they had been placed without allowing proper time to intervene between the shots, and that there was no evidence in the entry that there had been a so-called "dust explosion."

At the close of all the evidence appellant filed its motion, in writing, for a peremptory instruction, which was denied, and the action of the court in this regard has been assigned as error. It is also urged by appellant that the court erred in passing on instructions.

GEORGE O'BRIEN, and JETT & KINDER, for appellant.

Keefe & Sullivan, for appellee.

Mr. Justice Scott delivered the opinion of the court:

The declaration herein charges a willful violation of the statute, which reads as follows: "In case the galleries, roadways or entries of any mine are so dry that the air becomes charged with dust, the operator of such mine must have such roadways regularly and thoroughly sprayed, sprinkled or cleaned, and it shall be the duty of the inspector to see that all possible precautions are taken against the occurrence of explosions which may be occasioned or aggravated by the presence of dust." (Hurd's Stat. 1905, chap. 93, sec. 20, clause *g*.)

In support of the contention that the court erred in refusing to direct a verdict, it is said that there is no evidence to sustain the averment of the declaration to the effect that the injury was attributable to dust permeating the air. The evidence of the plaintiff tends to show that the first shot fired, generated gas; that a later shot caused this gas to explode, and that the explosion of this gas so generated by the firing of the first shot was aggravated by dust in the air to such an extent that it inflicted the injuries from which appellee suffered, when it would not have done so had the entry been properly cleaned or sprinkled. The declaration avers that the so-called "dust explosion" was caused directly by the blast, while the proof tends to show that the blast exploded gases resulting from the firing of a previous shot, which explosion, by reason of dust permeating the air, became the so-called "dust explosion." This, at most, is merely a variance. If appellant desired to avail itself thereof it should have pointed the same out on the trial, when appellee would have had an opportunity to seek leave to amend.

It is urged that the evidence offered by appellee to show that there was an explosion of gases, which was aggravated by the dust, and which, as a direct consequence of such ag-

gravation, became the proximate cause of the injury, is so unreasonable as to be unworthy of credence, and that for this reason it does not tend to support the averment of the declaration in this regard.   It is not impossible that this testimony is true.   The incidents detailed are not inconsistent with fixed natural laws.   The weight to be given the evidence was a question for the jury.   *Chicago City Railway Co.* v. *Henry,* 218 Ill. 92.

It is also contended that there is no evidence of a willful violation of the statute.   The evidence of the appellee showed that the attention of the mine examiner had been called to the dust in the entry and the necessity that some sprinkling should be done, several weeks before the explosion occurred, but that the roadway had not been sprinkled or cleaned.   The proof of the appellant was, that on the morning of the day in question its mine was examined by its certified mine examiner; that he made the usual report on that morning showing that the roadway in question had been properly sprinkled, and it is urged that as appellant had employed the proper person to inspect the mine, and that as such person reported the roadway properly sprinkled, appellant could not be found guilty of a willful violation of the statute, because it had performed its full duty by placing the roadway in a condition satisfactory to the examiner authorized by statute to make the inspection.   This amounts to saying that the examiner had the power to adjudicate the question whether the roadway needed to be sprinkled or cleaned.   The examiner was the vice-principal of appellant.   It was the duty of appellant to comply with this statute and to employ an examiner who would see that the entry was sprinkled or cleaned.   The fact that the examiner employed had the statutory certificate in nowise relieved appellant from its duty in the premises.   The willful failure of the manager or examiner to observe the provisions of the statute is the willful failure of the operator, even where the operator has no actual knowledge of the

232—19

delinquency of the manager or examiner. (*Henrietta Coal Co.* v. *Martin,* 221 Ill. 460.) The purpose of the statute requiring the employment of an examiner bearing the proper certificate is merely to make the employment of a competent person as certain as it can .be made by the. law. If evidence offered for the appellee be true, the manager had knowledge for many days that this roadway needed cleaning or sprinkling, and with such knowledge failed to have the same .either cleaned or sprinkled. Such failure, under such circumstances, was a conscious omission to perform a duty and was a willful failure to obey the statute. *Carterville Coal Co.* v. *Abbott,* 181 Ill. 495; *Donk Bros. Coal Co.* v. *Peton,* 192 id. 41.

It is also insisted that appellee fired the shots in an unskillful manner and by a method forbidden by the statute, and that his acts were the cause of the explosion. The evidence on his part indicates that, even if this were true, the explosion so caused was merely the explosion of gas resulting from the firing of one of the earlier shots; that the explosion of that gas could not have reached appellee at the place in the mine where he was injured had the roadway been sprinkled or cleaned, and that the explosion reached him and became harmful to him because it was aggravated and made more destructive by the fact that the air in the roadway was charged with dust. Under these circumstances appellee's negligence, if it existed, was merely contributory and would afford no defense under our statute in reference to mines and miners. The court did not err in refusing to direct a verdict.

Appellant requested instructions advising the jury that appellee could not recover unless he established the averments of his declaration by a clear preponderance of the evidence. The court modified these instructions by striking out the word "clear," and directed the jury to find for appellee if his cause was established by a preponderance of the evidence. Appellant in this connection refers us to cases

holding that in an action to recover a penalty given by a penal statute the cause of the plaintiff must be established by a clear preponderance of the proof. Those cases are not in point, for the reason that this is not an action to recover a penalty.

It is also suggested that the willful failure to observe the provision of the statute charged by the declaration is made a misdemeanor by section 33 of chapter 93, *supra*, and that appellee should therefore have been required to show the violation of that statute by evidence which would convince beyond a reasonable doubt. We do not think appellant in a position to raise this question on appeal. No instruction was offered presenting this view. It is clearly apparent from the instructions asked, that appellant sought to have the issues submitted to the jury on the theory that the rule in reference to the sufficiency of the evidence applicable was the one obtaining in actions to recover a forfeiture inflicted by a penal statute. A party cannot, in a reviewing tribunal, succeed upon a theory of the law inconsistent with that upon which he tried his cause in the *nisi prius* court.

Objections to the first, second and third instructions given at the request of appellee are hypercritical, except one relating to the second instruction. That instruction advised the jury, among other things, that the law required appellant to have the roadway sprinkled or cleaned if it was "dry and dusty." The statute imposes that duty if the roadway is so dry that "the air becomes charged with dust." The word "dusty" is not necessarily synonymous in meaning with the language just quoted, but in the ninth instruction given at the request of appellant the jury were told that the operator is only required to sprinkle the entry when the same is so dry "that the air becomes charged with dust." The two instructions, read together, correctly state the law.

Three instructions asked by the appellant were refused. The first includes a proposition for which the proof affords

no basis.  The objection to the second is disposed of by what has been said in this opinion in reference to the assignment of error which challenges the action of the court in refusing to direct a verdict.  The third is an abstract proposition of law.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*