Petroneli Belskis, Defendant in Error, v. Dering Coal Company, Plaintiff in Error.

1. APPEALS AND ERRORS—*effect of former decision.* If evidence upon one trial has been admitted and an appeal taken and determined in which no question was raised as to the competency of such evidence, the same is competent upon the second trial of the cause as the question of its admissibility is *res judicata.*

2. EVIDENCE—*when writing offered for purposes of impeachment properly excluded.* If a writing containing an alleged contradictory statement is relied upon by way of impeachment, it is competent, if the witness admits its integrity; otherwise the paper must be established by evidence before it becomes competent.

3. INSTRUCTIONS—*when upon right of recovery not erroneous.* An instruction is proper which tells the jury that if they believe from the evidence that the plaintiff has proven her case as charged in the declaration or either count thereof by a preponderance of the evidence the verdict should be for the plaintiff.

4. INSTRUCTIONS—*containing abstract proposition of law.* An instruction which contains only an abstract proposition of law, though subject to criticism, will not reverse if it could not have misled the jury.

Action in case for death caused by alleged wrongful act. Error
to the Circuit Court of Vermilion county; the Hon. E. R. E. KIM-
BROUGH, Judge, presiding. Heard in this court at the May term,
1909. Affirmed. Opinion filed October 25, 1909.

O. M. JONES and CHARLES TROUP, for plaintiff in
error; MASTIN & SHERLOCK, of counsel.

KEESLAR & GUNN and H. ERNEST HUTTON, for de-
fendant in error.

MR. PRESIDING JUSTICE BAUME delivered the opinion
of the court.

The plaintiff, Petroneli Belskis, brought this suit in
the Circuit Court of Vermilion county against the
defendant, Dering Coal Company, to recover damages
alleged to have resulted by reason of the wilful failure
of defendant to comply with certain provisions of the
Mines and Miners Act, whereby her husband, John
Belskis, was killed. Upon the trial there was a ver-
dict and judgment against defendant for $1999. The
defendant prosecutes this writ of error to reverse said
judgment.

The declaration contains two counts. The first count
charges the defendant with having wilfully failed and
neglected to have the room in which the deceased was
at work in its mine examined by the mine examiner,
and to mark therein with chalk the month and day of
his visit, whereby a large rock in the roof of said room
fell upon the deceased. The second count charges the
existence of a dangerous condition in said room, con-
sisting of a large, loose rock in the roof thereof, and
that the defendant by the exercise of reasonable care
could have learned of such dangerous condition; that
the defendant wilfully failed to inspect said room be-
fore permitting the deceased to enter therein to work,
and wilfully failed to place a conspicuous mark on said

large, loose and dangerous rock as notice to him to keep out, whereby said rock fell upon the deceased and caused his death.

In the afternoon of June 3, 1907, John Belskis, a coal miner in the employ of the defendant, was killed by the fall of a large rock from the roof of his working place, being room 5 in the third southwest entry in the defendant's mine. McManaman, the mine examiner, employed by defendant, testified that he examined the entire mine during the night of June 2 and early morning of June 3, including the room in question, and that he then found no loose or dangerous rock in the roof of said room, and that he then inscribed with chalk on the face of the coal in said room the month and day of his visit. The written report of this examination, claimed to have been made by McManaman, contains the statement that there was then loose rock in said room 5 in the third southwest entry, but does not state that he made any conspicuous mark thereat, and there was no evidence that he made any such mark. The only theory on which the report made by McManaman can be reconciled with his testimony in that regard is that the loose rock mentioned in said report referred to some rock other than the one which fell upon the deceased. There is an irreconcilable conflict in the testimony relating to the precise location of the rock in question which fell. McManaman testified that none of the rock then projected beyond the standing shot while several witnesses called on behalf of the plaintiff testified that the rock extended some distance from the face of the coal. As tending to show that McManaman neglected and failed to examine the room as claimed by defendant, several witnesses called on behalf of the plaintiff testified that they saw no mark and that there was no mark indicating the date of the examiner's visit, and three witnesses testified that they saw McManaman asleep upon the hay in the stable during the time he claims he was making his examination of the mine. We think the jury were

warranted in finding that McManaman wilfully failed and neglected to examine the room in question on the night preceding the death of Belskis, and that such examination would have disclosed a dangerous condition existing there.

Thomas Moses, a witness called on behalf of plaintiff, was permitted, over the objection of defendant, to testify to the substance of a conversation he had with McManaman about two hours after the accident to Belskis, when he met McManaman near the mouth of room 5, as he (Moses) was coming out after having made an examination of the room. He testified that he said to McManaman, "Eddie, did you examine this place last night?" and the latter replied, "I did;" that the witness then said, "Where did you place your mark?" and that McManaman walked to the face of the coal and put his light up and said, "Right there;" that the witness said "It isn't there now," and McManaman replied, "No." It is urged that this testimony was incompetent as relating to a conversation which was merely the narration of a past event, not a part of the *res gestae,* and not offered for the purpose of impeachment. Admitting, which we are not disposed to do, that the admission of this testimony was improper for the reasons urged, it is made to appear that the same testimony was introduced upon a former trial of the case where there was a verdict and judgment against the defendant, from which judgment an appeal was allowed to this court and that upon such appeal no error was assigned or argued relating to the action of the trial court in admitting such testimony. The question is now *res judicata.* In Muren Coal Co. v. Howell, 217 Ill. 190, it was said: "Parties cannot bring their cases to this court in piecemeal, but must raise all questions presented by the record upon the first appeal by a proper assignment of error, which they desire the court to pass upon, or they will be deemed to have waived such questions and cannot

be permitted to raise them upon a subsequent appeal.''

The action of the trial court in permitting the witness Charles Ragudis to answer two questions relating to the proper practice in coal mining, and whether or not it is possible to tell when a large untimbered rock is going to fall, was not of sufficient significance to merit discussion. If error, it was harmless. It is impossible that the jury could have understood that it was the duty of the mine examiner to remove a dangerous rock, and the fact that it is impossible to determine the precise time when such rock will fall is self evident.

There was no impropriety in permitting the witness McManaman, called on behalf of the defendant, to testify upon cross-examination that the further mining of coal beneath the rock in question would tend to make a dangerous condition.

Two answers of the witness McManaman to questions on his direct examination were excluded by the court and this ruling is urged as error. The answer to the first question was merely the conclusion of the witness, and the answer to the second question was not responsive but was a restatement by the witness of his conclusion in the matter. The witness was fully interrogated with respect to the manner in which he conducted his examination to determine whether there was any unsafe condition in the room in question.

The witness Tony Mazulis who was working as the ''buddy'' of the deceased when the latter was killed, testified upon his direct examination by counsel for plaintiff, that he had noticed the rock in question about three or four days before it fell and that it sounded loose and appeared to be loose. Upon his cross-examination the witness was asked whether or not when a witness at the coroner's inquest he had stated that he had examined the rock about thirty minutes before it fell and didn't think it was dangerous, and the court sustained an objection to the question. The question

was proper as laying the foundation for the impeachment of the witness, and he should have been permitted to answer. We do not, however, consider the ruling so prejudicial as to require a reversal of the judgment. It is evident from the record that the trial court misunderstood the purpose of the inquiry. The same witness testified that the signature to a paper shown him was in his handwriting, but there was not as much writing on the paper when he signed it as there was when presented to him at the trial; that he did not testify through an interpreter when he testified at the coroner's inquest; that he talked partly in Lithuanian and partly in English; that he did his best, trying to say it in some way and did not know whether they understood him or not; that he did not know what they wrote on the paper, but signed it at the direction of a man who was there. Defendant offered no evidence to support the integrity of the paper which was signed by the witness, but offered in evidence that portion of the paper above the signature of the witness wherein appeared the following:

"I examined this rock about thirty minutes before it fell. I didn't think it was dangerous." Upon the objection of counsel for plaintiff the offer was excluded. The rule invoked by counsel for defendant in support of their assignment of error upon the action of the court in excluding such offer is stated thus: "Where the contradictory statements were reduced to writing by the witness, or by another and signed by him, the necessity of laying a foundation for the reception of impeaching evidence still remains, but for obvious reasons the limitation as to the time and place of making the statements does not apply. It is sufficient to show the witness the paper or read it to him and question him concerning its genuineness. If he admits that it is in his handwriting, or that he has signed it in its present form, it may, at the proper season, be received in evidence." Chicago City Ry. Co. v. Matthieson, 113 Ill. App. 246. In Momence Stone Co. v. Groves, 197

Ill. 88, the court speaking of a like paper signed by a witness and the admissibility of such paper in evidence said: "Having admitted that he signed the paper and made the statements contained in it, it was then competent to be used for the only purpose which it was admissible, that he had made a different statement out of court from the one made on the trial." In the case at bar the witness repudiated the paper in the form in which it was presented to him and denied that he had knowledge of its contents, and in the absence of any countervailing evidence with relation to the paper and the circumstances under which it was signed the paper was properly excluded.

The second instruction given at the instance of plaintiff informed the jury, that if they believed from the evidence that the plaintiff had proven her case as charged in her declaration or either count thereof by a preponderance of the evidence, their verdict should be for the plaintiff. Where the several counts of a declaration contain all the averments necessary to a recovery, the giving of such an instruction, although not to be commended, has never been held to constitute reversible error. Dickson v. Swift Co., 238 Ill. 62. The special ground of objection urged to the giving of such instruction in this case is that the first count of the declaration fails to allege that the rock in question was loose or dangerous before or at the time the mine examiner examined the room. While such count of the declaration is good after verdict, it should have contained the allegation above indicated, but the giving of such instruction could not have operated to mislead the jury, because by their answer to the first special interrogatory submitted at the request of the defendant, they found that the rock which afterwards fell and killed John Belskis was loose and dangerous during the night before the day when he was killed. The third instruction given at the instance of the plaintiff was abundantly supported by the evidence and properly limited the purpose for

which the report of the mine examiner could be considered by the jury. The fifth instruction offered by the plaintiff and given by the court instructed the jury in substance that a mine examiner is a vice principal of the mine operator, and the fact that such mine examiner held a certificate or license from the state mining board did not serve to shift the responsibility from such mine operator, so as to relieve him from liability for a wilful failure on the part of the mine examiner to observe the provisions of the statute relating to Mines and Miners. While the instruction is subject to the criticism that it is abstract in form it states the law accurately and could not have misled the jury.

Defendant's criticism of the action of the court in refusing certain instructions is fully answered by the holdings in Henrietta Coal Co. v. Martin, 221 Ill. 460; Eldorado Coal Co. v. Swan, 227 Ill. 586; Davis v. Illinois Collieries Co., 232 Ill. 284, and Peebles v. O'Gara Coal Co., 239 Ill. 370. The given instructions offered on behalf of defendant fully advised the jury as to the law of the case bearing upon the defense interposed by it.

There is no reversible error in the record and the judgment of the Circuit Court will be affirmed.

*Affirmed.*