152     APPELLATE COURTS OF ILLINOIS.

Eichhorn v. St. Louis & O'Fallon Coal Co., 212 Ill. App. 152.

## Marguerite Eichhorn, Appellee, v. St. Louis & O'Fallon Coal Company, Appellant.

1.   MINES AND MINERALS, § 153*—*when evidence tending to show dangerous condition of roof of mine prior to injury to miner is admissible.*   In an action to recover for the death of a miner, due to the fall of slate from the roof of a room in a mine, in which it was charged that there was an unsafe condition in the roof of the room where deceased was injured and that there was a wilful failure to mark the same by the mine examiner, evidence tending to show the dangerous condition of the roof of the room some days prior to the day of the injury was admissible.

2.   MINES AND MINERALS, § 181*—*when question whether failure of mine examiner to mark dangerous place in mine is proximate cause of injury to miner is for court.*   It was a question for the court as to whether the failure of the mine examiner to mark a place in the roof of the mine as dangerous was the proximate cause of the death of a miner, due to slate falling from the roof, where the case was tried before the court without a jury and the evidence tended to show that the slate in the roof over the coal was more or less brittle and that the only safe way of protecting that kind of a roof is by propping or taking down the slate, and that there is no way to determine when such slate will fall, even though it appears to be solid when inspected.

3.   DEATH, § 67*—*when verdict for death of coal miner not excessive.*   A verdict for $6,000 for the death of a coal miner was not excessive, where deceased was 29 years of age at the time of his death, had been earning $5 per day 4 days in the week, was an able-bodied man and lived with and supported his family.

4.   WORKMEN'S COMPENSATION ACT, § 2*—*when due posting by employer of election not to be bound by is shown.*   Evidence *held* sufficient to show that notice that the employer had elected not to be bound by the Workmen's Compensation Act had been duly posted, as required by law.

Appeal from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.   Heard in this court at the March term, 1918.   Affirmed.   Opinion filed November 1, 1918.

BARTHEL, FARMER & KLINGEL, for appellant.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

WEBB & ZERWECK and T. M. WEBB, for appellee.

MR. PRESIDING JUSTICE BOGGS delivered the opinion of the court.

On and prior to July 19, 1916, appellant operated a coal mine in St. Clair county, Illinois, and among various other working places in said mine was room 4 off a certain stub entry. This room was about 250 feet in depth from north to south, and about 37 feet in width; it was west from and next to room 3. In the east rib of room 4, at a place starting at the southeast corner and extending northward about 21 feet, it was intended to drive a crosscut from room 4 into room 3. The vein of coal was about 6½ feet thick, and on the top thereof was a layer of slate from about 20 inches to 2 feet in thickness, a part of which would come down with the coal when shots were fired, leaving a solid limestone rock top where the slate had fallen.

Some days prior to the accident in question, machine men had gone into room 4 and made the first undercutting to a depth of about 6 feet in the east rib of the room running from the southeast corner of the room northward about 21 feet, where the crosscut was to be turned off. Thereafter shots were so placed as to blast out the center of the face of the crosscut leaving it a "V" shape. The coal was then cleaned up and removed. A day or two prior to the accident shots were placed in the right and left face of the crosscut for the purpose of blasting out the remaining portions which had been undercut at the face of the crosscut. These shots were fired the day before the accident. The coal that had been shot down was piled up in the face of the crosscut to within about 2 feet of the slate.

At about 3 o'clock on the morning of July 19th, the date of the accident, the mine examiner inspected this room, leaving his visitation mark, "7/19". He examined the slate in the roof with his sounding rod, and found conditions safe according to his testimony, and

154    APPELLATE COURTS OF ILLINOIS.

Eichhorn v. St. Louis & O'Fallon Coal Co., 212 Ill. App. 152.

so reported the same and made a record thereof in the mine book kept for that purpose.

Appellee's intestate, and buddy, went to work in this room at about 8 o'clock of said day. On entering the room, they observed some loose slate in the roof and along the face and east rib of the room, and undertook to, and did, pull a quantity of the slate down. They also sounded the roof with their picks, according to the testimony of the buddie of appellee's intestate, and believed the remaining slate was solid and safe. Appellee's intestate was an experienced miner and his buddie had had about 2 years' mining experience. They proceeded to load the coal and from time to time sounded the roof and were of the opinion that the slate hanging therefrom was solid. While loading the fifth car, at about 11 o'clock a. m., a piece of slate of triangular shape about 7 or 8 feet in length and about 20 inches to 2 feet in thickness fell upon appellee's intestate, catching his leg under the fall and injuring him, from which injury he thereafter died.

The amended declaration consists of two counts. The first count charges a dangerous condition in the working place of appellee's intestate, a wilful failure on the part of appellant to enter the working place of appellee's intestate and inspect the same and to place a conspicuous mark thereat as notice to all men to keep out, and to make a record thereof in a book kept for that purpose; the second count charges a wilful failure to observe the unsafe and dangerous roof and place a conspicuous mark thereat, etc., each count further alleging the rejection of the Workmen's Compensation Act by appellant. To this declaration appellant filed a plea of the general issue. The case was tried by the court without a jury, a finding was had for appellee and judgment rendered thereon against appellant for the sum of $6,000. To reverse said judgment this appeal is taken.

It is first contended by appellant that the court

erred in its rulings on the evidence, the contention of appellant being that certain testimony offered by appellee and heard by the court tending to show the condition of the roof of the room in which appellee's intestate received his injury, some days prior to the day of the injury, was erroneous.

The principal question to be determined in this case was whether or not there was an unsafe condition in the roof of room 4 where appellee's intestate received his injury, and whether there was a wilful failure to mark the same by the mine manager of appellant. The evidence in question, we think, was proper, as it tended to show that the slate in the roof was observable for some days prior to the day of the injury, and that miners of experience were able to tell that this slate overhanging the roof in said room was dangerous and was liable to fall without previous warning. Several witnesses of experience in mining testified that this slate was of a character that was more or less brittle and was liable to fall, and that the only proper way to handle a condition of this kind was either to take the slate down or to prop it. If the testimony of these witnesses is true, it tended to show knowledge, or that there should have been knowledge on the part of appellant and its mine manager with reference to said condition, and tended to show that this slate should have been marked with a conspicuous mark, as being dangerous. The court did not err in receiving this testimony.

It is next contended by appellant that on the morning of July 19, 1916, there was nothing to indicate to the mine examiner that a dangerous condition existed in the roof of this room; that the testimony of the mine examiner to the effect that he examined the roof, that he tested it with his rod, sounded the slate, and that he found it solid, together with the testimony of the buddy of appellee's intestate to the effect that he and appellee's intestate sounded the roof from time

to time while they were loading the cars in question, was proof conclusive that no dangerous condition was indicated at said time, and that the failure of appellant's mine examiner to mark said place as dangerous was not wilful under the meaning of the statute. Appellant cites in support of his contention the case of *Cook v. Big Muddy-Carterville Min. Co.*, 249 Ill. 41.

While there is some language in the opinion of the court in said case that might be construed to support the theory of the law as contended for by appellant, we think the expression of the Supreme Court in the case of *Piazzi v. Kerens-Donnewald Coal Co.*, 262 Ill. 30, and in *Schultz v. Henry Ericsson Co.*, 264 Ill. 156, clearly establishes the position of the Supreme Court of this State on the construction of said statute to be, that the question as to whether the failure of the mine examiner to mark a place as dangerous was the proximate cause of the injury is a question of fact for the jury.

In *Schultz v. Henry Ericsson Co., supra,* the court at page 165 says: "The provisions of the statute we are considering are in the same language as section 33 of the Mining Act, in force at the time this statute was passed. In the recent case of *Piazzi v. Kerens-Donnewald Coal Co., supra,* this court held that the mine owner or operator is liable for a wilful violation of the mining statute even though he had the place examined by a mine examiner, who in good faith believed that the place was not dangerous. * * * It was held in *Aetitus v. Spring Valley Coal Co.*, 246 Ill. 32, that if conditions in the mine are in fact dangerous, the owner or operator cannot excuse himself from liability for a wilful violation of the Mines and Mining Act if he fails to cause the places where the dangerous conditions exist to be marked, even though the mine examiner may have examined those places and in good faith believed that the conditions were not dangerous." And in *Aetitus v. Spring Valley Coal Co., supra,* on

page 39 it is said: "When the mine owner or operator is advised of the conditions in the mine, he must place in the mine, if it is dangerous, the statutory marks, and if he fails to do so he acts at his peril, and he cannot excuse himself because he or his examiner or manager may think the mine safe. To so hold would be to permit the mine owner or operator, or his examiner or manager, to usurp the functions of the court and jury, and to pass upon a question which, in every case like this, is a matter of proof and is to be determined as a fact by the jury. *Catlett v. Young*, 143 Ill. 74; *Odin Coal Co. v. Denman*, 185 Ill. 413; *Davis v. Illinois Collieries Co.*, 232 Ill. 284; *Eldorado Coal and Coke Co. v. Swan*, 227 Ill. 586; *Mertens v. Southern Coal and Mining Co.*, 235 Ill. 540; *Olson v. Kelly Coal Co.*, 236 Ill. 502; *McCarthy v. Spring Valley Coal Co.*, 232 Ill. 473."

The evidence in the record in this case tends to show that the slate over the coal in this mine was more or less brittle and that the only safe method of protecting that kind of a roof is by propping or taking down the slate, and that there is no way to determine when such slate will fall, even though it appears solid when inspected. We are therefore of the opinion that on the record in this case under the Mining Act, as construed by the Supreme Court in the foregoing cases, it was a question of fact, for the court, as to whether the failure of the mine examiner of appellant to mark the slate in the roof in said room was the proximate cause of the death of appellee's intestate.

It is next contended by appellant that the dangerous condition in said room 4, if it was a dangerous condition, occurred by virtue of the work being done by appellee and his buddy, and that therefore appellant would not be liable. It is only necessary for us to state that the evidence in the record does not support appellant's contention, the preponderance of the evidence being to the effect that the condition of the

room which resulted in the fall of the coal or slate and death of appellee's intestate existed prior to and at the time that appellee's intestate and his buddy began work.

It is next contended by appellant that the finding and judgment in this case is excessive. The record discloses that appellee's intestate was 29 years of age at the date of his death; that he was earning some $5 a day as a miner and that he was working at the time of his death 4 days a week, and that he was an able-bodied man and that he lived with and supported his family. In view of this evidence we are not able to say that the finding and judgment of the court is so excessive as to require a reversal of the judgment on that account.

Lastly, it is contended by appellant that no proper proof was made of the posting of the notice to the effect that appellant had elected not to be governed by the provisions of the Workmen's Compensation Act. It is admitted that the notice of such election was filed with the Industrial Board, but it is contended that the proof of the posting of the notice was not sufficient. Several witnesses testified on behalf of appellee to the effect that a notice was posted touching the connection of appellant with the Workmen's Compensation Act, and several of said witnesses testified to the effect that while they were not able to state the exact language of the notice that was posted, that it was to the effect that appellant would not be bound by the provisions of said act.

While the evidence with reference to the posting of said notice is not of the most satisfactory character, at the same time we are inclined to hold that the evidence was sufficient to warrant the court in finding that notice that appellant had elected not to be governed by the Workmen's Compensation Act had been posted, as required by law.

Finding no reversible error in the record the judgment of the trial court will be affirmed.

*Affirmed.*