## Himrod Coal Company v. Onie Stevens.

1.  STATUTES—*Regulating Manner of Conducting Industries—Con-
struction.*—Where a statute regulating the manner of conducting a
certain industry is ambiguous or indefinite, courts will receive as an
aid to proper interpretation the construction which practical persons
engaged in the industry generally place upon it.

2.  QUESTION OF FACT—*Principal Doors in Mines.*—Whether a door
is a principal door within the meaning of the mining act is a ques-
tion of fact for the jury.

Trespass on the Case.—Death from negligent act.   Appeal from the
Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER,
Judge presiding.   Heard in this court at the May term, 1902.   Affirmed.
Opinion filed November 1, 1902.

ALEXANDER CLARK, attorney for appellant.

GEORGE T. BUCKINGHAM and C. H. BECKWITH, attorneys
for appellee.

MR. JUSTICE HARKER deliver the opinion of the court.

This is an appeal from a judgment of $5,000 recovered by appellee in a suit against appellant for damages for the loss of her husband, Orela Stevens, who was killed while employed in appellant's coal mine as a car driver.

Appellant's mine is operated by a shaft, from the bottom of which four main entries radiate at right angles, running respectively, northeast, southwest, northwest and southwest. Turning off from the east side of the southeast main entry, and at right angles from it, are side entries. Opening from the side entries are rooms, from which coal is mined and conveyed in cars over tracks leading through the entries to the shaft. The cars are hauled by mules in charge of drivers. The side entries are worked in pairs. At the time of the accident, appellee's husband was a mule driver on side entry third east, which was being worked in connection with side entry fourth east. It was his duty to hitch his mule to cars loaded by miners from the rooms on side entry third east and take them along the railroad track laid in that entry to the southeast main entry and thence on to the bottom of the shaft. Side entry fourth east was parallel to third east, a pillar of coal twenty feet thick separating them. The railroad track in fourth east did not extend to the main entry, but passed through a "cross-cut," which had been cut diagonally through the pillar of coal and connected the two side entries. The driver in fourth east, therefore, in taking cars to the bottom of the shaft, passed through the cross-cut to the track in third east and thence along the track to the main entry. The cross-cut was seven feet high, from eight to ten feet wide and nearly thirty feet long. In it, and about midway between the two entries, was a trap door, six feet by six, which swung from either side automatically. The purpose of this door was to prevent the air, which was forced into the mine for ventilation, from escaping through the cross-cut instead of going further up third east to another cross-cut, provided to take the current of air into the upper part of fourth east. There was a number of

these doors situated in various parts of the mine, all con-structed with the view of controlling ventilation.

Approaching this door from a point some distance in fourth east on through the cross-cut to the track junction in third east was a heavy down grade. At the time of the accident, deceased was riding on a loaded car which he was taking from a room in third east to the shaft. The driver from fourth east had started with a load, and, riding on the rear end of his car, was going at the rate of eight miles per hour. Reaching the door the mule shoved it open with his nose, as was his wont, and kept right on at that rate of speed until it collided with deceased at the junction of the tracks near the mouth of the cross-cut. Deceased was thrown from his car and sustained injuries from which he died. Neither driver had knowledge or warning of the other's presence until too late to avoid the collision. The driver from fourth east was prevented from seeing deceased by the door.

The suit is based upon a clause in the mining act which reads as follows:

"At all principal doorways through which cars are hauled, an attendant shall be employed for the purpose of opening and closing said doors when trips of cars are passing to and from the workings."

It is contended by the appellee that the door in question was a principal one; that no attendant to open the door was provided by appellant; that because of no attendant being there to open it, the drivers did not know of the impending danger; and that because of such lack of knowledge, the collision occurred. There was no attendant at the doorway and the evidence clearly shows that because the door was closed, the driver from fourth east had no knowledge of the presence of the deceased driving in front of the mouth of the cross-cut toward the point where the two tracks joined. It was because of such want of knowledge that the collision occurred. The frictional question of fact presented to the jury was whether the doorway was a principal one. Upon that question there was a sharp

conflict in the testimony. It was fairly and squarely presented to the jury under the evidence and the instructions of the court. Presented as it was, as a question of fact pure and simple, it was the peculiar province of the jury to decide it. We do not hesitate to say that there was abundant evidence to support a finding that the doorway was a principal one. Regarding it as such, and that appellant's failure to have an attendant stationed there was the proximate cause of the injury, the Circuit Court properly refused the peremptory instruction to find for the defendant.

After the court had overruled a motion for new trial, appellant moved in arrest of judgment, for the reason that the allegations of the declaration were not sufficient to sustain a verdict and judgment. The overruling of that motion is the chief ground urged by appellant for reversal. In support of the contention upon that point, counsel for appellant states, in his printed argument, that there is no allegation in the declaration that the doorway in question was a principal doorway, nor are any facts alleged from which such allegation can be fairly inferred. While it is not directly alleged in the declaration that the doorway was a "principal doorway," it is stated parenthetically, the language being:

"And in said short entry or cross-cut aftersaid, about midway of said pillar, was then and there a certain doorway, *the same being a principal doorway of said mine,* and a door hung therein, through which said doorway all trips of cars passing to and from the rooms adjoining said entry fourth east were obliged to, and did then and there, pass," etc.

Upon the trial the allegation was treated as sufficient, and in the hearing of evidence, the contest surged about that point. Even if it be conceded that the allegation is so inartificially stated as would have warranted the court in sustaining a demurrer to the declaration, it must certainly be regarded as a defect curable by verdict.

It is further contended that the declaration places an improper construction upon the statute and one entirely foreign to its purpose. The sole purpose of a provision requiring an attendant at all principal doorways through

which trips of cars pass to and from the workings, it is insisted, was to assist in the ventilation of the mine by keeping the door closed, as far as possible, so that air currents should not be diverted into wrong places. The theory of the declaration is that the provision has the further purpose of protection for the car drivers. It alleges that it was the duty of the coal company to have an attendant at the door for the purpose of opening it when trips of cars were about to pass, so that drivers might see and be otherwise warned of the approach of other trips beyond the door.

The construction contended for by appellant is, in our opinion, too narrow. The statute is silent as to why and for what purpose these doors are to be opened and closed by attendants. The act from which the provision is taken was passed for the purpose of " promoting the health and safety of persons employed in coal mines." It would seem, then, that all dangers to the health and safety of miners which an observance of the required provisions would obviate, fell within the contemplation of the legislature. If the sole purpose of the provision in question was to secure ventilation, we are unable to understand why the duty of opening the door was cast upon the attendant— because it is the *closed* door that deflects the air current and prevents it from going in the wrong direction. It is well known by persons conversant with coal mining that principal doors are placed near the point where entries join and near the junction of mine tracks. At such points there is always danger of collision, and it appears to us to be within the bounds of reasonable construction to say the purpose of requiring the attendant to open the door was to promote safety to drivers and shield them from the dangers of collision. Indeed, that is the construction which appellant, in the operation of its mine, placed upon this provision prior to the unfortunate accident complained of. The evidence shows that it had four attendants, called " trapper boys," stationed at " principal doors " in other parts of the mine, who were charged by the mine boss with the duty of flagging drivers and preventing them from

running together.  It was well understood by the super-intendent, the bosses and the men, that it was the dominant duty of every "trapper," attending a door, to furnish, in some way, warning to drivers.  Where a statute regulating the manner of conducting a certain industry is ambiguous or indefinite, courts will receive as an aid to proper interpretation the construction which practical persons engaged in the industry generally place upon it.

The Circuit Court properly overruled the motion in arrest of judgment; and as there is ample evidence in the record showing a willful neglect on the part of appellant to comply with the statutory requirement in question, and that by reason thereof the death of appellee's husband occurred, the judgment will be affirmed.