## John Karkowski, Appellee, v. LaSalle County Carbon Coal Company, Appellant.

### Gen. No. 5211.

1. MINES AND MINERS—*what principal doorway requiring attendant within meaning of statute.* *Held,* that the jury in this case was justified in finding that the doorway in question in this case was a principal doorway requiring an attendant within the meaning of the statute. The court held that the jury in determining what was a principal doorway had a right to consider whether hauling cars passed back and forth through the doorway in question.

2. MINES AND MINERS—*what instruction as to wilful violation not improper.* *Held,* that an instruction on this subject given in this case was not subject to the criticism that it told the jury as a matter of law that the doorway in question was a principal doorway within the meaning of the statute.

3. MINES AND MINERS—*what instruction in action charging wilful violation improper.* In such an action an instruction on the subject of negligence is improper.

4. MINES AND MINERS—*what not defense to action charging wilful violation.* Good faith upon the part of the mine operator with respect to the observance of the statutory requirements is

not a defense to an action under the statute charging wilful violation.

5. Instructions—*when defining particular word improper.* An instruction defining the word "principal" as meaning "a thing of first or prime consequence" is improper, as such definition is but one of numerous definitions given of said word in standard lexicons.

6. Instructions—*must not single out particular evidence.* An instruction is properly refused which singles out one matter for the consideration of the jury in determining a particular issue of fact.

7. Verdicts—*when not excessive. Held,* that a verdict in an action for personal injuries reduced by *remittitur* to $10,500, was not excessive where it appeared that the plaintiff at the time of the accident was 38 years of age, weighed 155 pounds, was earning $2.50 per day, while at the time of trial, nearly a year and a half after the accident, he weighed but 155 pounds and was without earning capacity.

Action in case for personal injuries. Appeal from the Circuit Court of La Salle county; the Hon. Edgar Eldredge, Judge, presiding. Heard in this court at the April term, 1909. Affirmed on remittitur. Opinion filed March 11, 1910. Rehearing denied April 13, 1910.

McDougall, Chapman & Bayne and Walter A. Panneck, for appellant.

Duncan, Doyle & O'Conor, for appellee.

Mr. Justice Willis delivered the opinion of the court.

John Karkowski, appellee, worked in a mine of the La Salle County Carbon Coal Company, appellant, as a mule driver. The mine was operated by means of a perpendicular shaft below the surface of the earth, and by main entryways and passageways leading at right angles from the bottom of the shaft, and by other passageways and entryways, with rooms driven off and leading away from said main entryways to the face of the coal. On June 8, 1907, appellee was driving a mule drawing two cars of coal called a "trip," and riding on the left hand side of the front car. When the mule came to the door in what is known

SECOND DISTRICT—MARCH, 1910.    401

Karkowski v. LaSalle County Carbon Coal Co., 154 Ill. App. 399.

as the seventh north entry off of the third west entry off of the main north entry, about 1,200 feet from the head of the entryway, through which cars loaded with coal were hauling, there was no trapper there to open the door. The mule put his head against the door to push it open, but for some reason it did not open. At this door and beyond in the direction the mule was traveling, the grade of the entry was downward, and the loaded cars pushed against the mule and he turned sideways between the door and the car on which appellee was riding and began kicking violently and appellee was thrown off the car into the space between the car and the rib of the entry. Then the door opened and the mule went ahead dragging the cars and appellee's left leg in front of the left front wheel, which did not revolve, either because it was spragged or because it was kept from revolving by appellee's leg. Appellee was dragged about thirty feet, when in some way he got out from in front of the wheel and the mule went on to the foot of the incline and stopped. Appellee crawled or dragged himself to that point and called for help, and was taken to his home and later to a hospital. He was so seriously injured internally, that for two weeks no attention was paid to his injured leg because his death from the internal injuries was expected. On his rallying from the internal injuries, his leg was treated. On December 21, 1907, he brought this suit against the company for the injuries so sustained, basing his right of action on the alleged wilful omission of appellant company to comply with the requirements of clause (f) of section 19 of chapter 93, entitled "Mines and Miners", Hurd's R. S. 1905, which provides that "At all principal doorways, through which cars are hauled an attendant shall be employed for the purpose of opening and closing said doors when trips of cars are passing to and from the workings." He obtained a verdict and a judgment for $15,000, and the company prosecutes this appeal.

The main question is whether this doorway was a

principal doorway within the meaning of the act, as contended by appellee, or a subordinate doorway as claimed by appellant. More witnesses testified for appellant that it was not a principal doorway, than testified for appellee that it was. It is apparent that appellant's witnesses viewed the matter from the standpoint of the owner of the mine, and appellee's from the standpoint of the miner. The theory advanced by most of the witnesses for appellant would leave in this mine only two or four principal doorways and all of these but a short distance from the shaft. We think appellant's construction of the meaning of the statute too rigid and not at all practical, and that if it were strictly applied to this particular mine, the mine could not be operated for want of air, as one of the chief requirements of the statute is the ventilation of the mine and all parts thereof, wherein miners work. One of the purposes of the clause of the act upon which this suit is based, is to provide for the safety of the drivers of "trips" through entryways where doors are placed for the regulation of the air circulation. The doorway where appellee was injured was not necessary for the ventilation of all parts of the mine, but it was necessary for the ventilation of quite a portion of the face of the mine where men were working at the time of the accident. One witness for appellant said that leaving that door open would not prevent some of the air from passing around the face of that portion of the mine, but he admitted that not enough air would circulate there to permit that portion of the mine to be worked for any length of time. From the evidence we think this should be held a doorway necessary for the ventilation of the mine. The fact that it is only required that an attendant be kept at doorways through which cars are hauled, to open and close the doors, shows that the legislators had in mind, when enacting the statute, something concerning the hauling of cars. They may have thought that if the drivers themselves undertook

SECOND DISTRICT—MARCH, 1910.     403

Karkowski v. LaSalle County Carbon Coal Co., 154 Ill. App. 399.

to open and close the doors, they might sometimes leave them open. It is obvious that the safety of the drivers was also contemplated, and the reason for it is clear, as in some of the entryways in mines where mules are used to draw trips which pass through doorways, the space between the load and the roof, and the car and the sides of the doorways is frequently very slight. A driver could get off the front of the car and go past the mule, open the door and return to his seat without particular danger; but if he should let his loaded cars pass, then close the door and seek to regain his position on the car, he might be imperilled. Moreover, he would have no certain way of causing the mule to stop after passing through the doorway.

It is urged that this argument applied to the statute would make all doorways through which cars were hauled, principal doorways, and would not give to the word "principal" its true signification. The statute was not passed with reference to this mine alone, but to conditions in coal mines generally. Other cases show that there are, in some mines, cross doorways through which cars occasionally pass and where doors are located. It may be that such a doorway would not be regarded as a principal doorway within the meaning of the statute. But whatever may have been meant by the term "principal doorway," certainly the doorway in a hauling way through which loaded cars pass, and the door to which must be kept closed or the workmen would be driven from a considerable portion of the face of the coal or would die there for lack of air, ought to be considered a principal doorway. The purpose of the law was to protect the miners at work and the driver while driving his trip. Whether the doorway in question was a principal doorway or a subordinate one, under the authority of Himrod Coal Co. v. Stevens, 104 Ill. App. 639, and Madison Coal Co. v. Hayes, 215 Ill. 625, was a question of fact, upon which the evidence was very conflicting, with plenty of evi-

dence to support the verdict of the jury, and we do not feel warranted in disturbing it. There was no trapper stationed at this door, and if this was a principal doorway then the statute was violated, unless, indeed, appellant's position in regard to the good faith of this mine manager is tenable, which will be discussed in connection with an instruction. Assuming that that instruction was properly refused, then appellant was guilty of a wilful omission to obey this law, and by reason thereof appellee was seriously hurt and is entitled to recover.

Appellant urges that appellee's sixth instruction required the jury to find that the doorway in question was a principal doorway. This instruction is not subject to appellant's criticism. It required that the jury, in order to find appellant guilty, believed from the evidence that appellee was injured as alleged in the declaration, and that such injury was caused by a wilful omission of appellant to comply with the statute, but did not tell the jury that this was a principal doorway. If it were possible to place such an interpretation upon it, that was removed by instructions given for appellant which plainly told the jury that they are to determine whether this was a principal doorway, and if it were not, appellee could not recover.

Appellant complains of the refusal of its thirty-second, thirty-third, thirty-fourth, thirty-sixth, thirty-eighth and thirty-ninth instructions.

The thirty-second instruction related to the negligence supposed to be charged in the declaration. Its refusal was proper for several reasons. First, no negligence was charged in the declaration. This is not a suit to recover damages for an injury as a result of negligence, but for a wilful violation of the statute. Second, the court gave, at the request of appellant, an instruction designated as number ten, which told the jury that even though they believed from the evidence that appellant was guilty of negligence which caused

or contributed to the injury to appellee, yet such fact would not warrant the jury in finding a verdict for appellee for the reason that appellee's cause of action was not founded on the negligence of appellant, but upon its failure to obey or comply with the provisions of the statute. Number ten having been given at appellant's request, it cannot now complain of the refusal of thirty-two and could not even had thirty-two been correct. The last sentence of instruction thirty-two read, "No presumption that the defendant was negligent arises from the mere fact that the accident happened." It is urged that this was proper and that the rule was not contained in any other instruction. There was no error in its refusal, for the reason that it also related to negligence, and this is not an action based on negligence as before stated.

The purpose of the thirty-third refused instruction was to inform the jury of the meaning of the word "principal" and read, "The court instruct the jury that the word 'principal' means a thing of first or prime consequence." This gave but one of numerous definitions of the word contained in standard lexicons, and all the main definitions should have been given if any were. As offered it was equivalent to telling the jury that there were but one or two principal doorways in this mine, thus invading their province.

The thirty-fourth refused instruction stated that certain elements of the proof would show that this was not a principal doorway. It was incorrect in every respect, invaded the province of the jury, and was properly refused.

The thirty-sixth refused instruction is the one heretofore mentioned, involving good faith. It would have told the jury that if appellant's mine manager, in the exercise of his best judgment made in good faith, did not believe that this was a principal doorway, and for that reason did not place a trapper at said doorway, then they should find the defendant not guilty. This instruction was properly refused for several reasons.

First, we adhere to our former conclusion that the question of the existence or non-existence of good faith is not involved in a case brought for the wilful violation of the provisions of the Mines and Miners Act, as expressed by us in Emerling v. Spring Valley Coal Co., 149 Ill. App. 97, and repeated in Aetitis v. Spring Valley Coal Co., 150 Ill. App. 497, which conclusions we then based upon the decisions in Catlett v. Young, 143 Ill. 74; Odin Coal Co. v. Denman, 185 Ill. 413; Eldorado Coal and Coke Co. v. Swan, 227 Ill. 586; Davis v. Illinois Collieries Co., 232 Ill. 284; Olson v. Kelly Coal Co., 236 Ill. 502. Notwithstanding the oft-repeated and vigorous insistence of counsel that the question of good faith of the mine operator or his or its mine manager is involved in a suit brought for a wilful violation of the requirements of the Mines and Miners Act, we deem it our duty to follow what the Supreme Court has said in those cases, and it will be time enough for us to hold as urged by counsel when the Supreme Court adopts their theory. Second, if good faith would relieve the operation of a mine from the charge of a wilful violation of this act, it must be the good faith of the operator of the mine, and if the operator is a corporation, then the good faith of its executive officers. Under this instruction the executive officers of appellant might have known that this was a principal doorway at which a trapper should be employed, but by employing a man and calling him a mine manager they could be relieved from liability by having him swear that he really and in good faith believed this was not a principal doorway. If that could be done, then it seems evident that the whole benefit intended by the statute could be frittered away and the operator of the mine could be relieved from liability in every case. It seems to us that the evidence of appellant's mine manager bears out the above suggestion. He testified that there were some sixteen or seventeen doors in the mine, but only two that he would call important; that the word "principal" was

never used in the mine; that he never heard it applied in the mine; that he was surprised that there was such a thing. He had not sought to inform himself as to the requirements of the statute and was ignorant of its requirements and had made no efforts to determine whether he should comply with it at this doorway. Moreover, if it were the law that the good faith of the mine manager would excuse the operator, there is no evidence in this record on which to base a good faith instruction.

The thirty-eighth instruction was properly refused because it singled out one matter for the consideration of the jury in determining whether this was a principal doorway and omitted other elements also necessary to be considered by them in deciding that question.

The thirty-ninth was properly refused as it attempted to tell the jury, as a matter of law, that which was properly a question of fact for them to decide.

It is urged that the verdict is grossly excessive and greatly disproportionate to the injuries sustained and is the result of prejudice and passion on the part of the jury.

Appellee was thirty-eight years old, weighed one hundred and fifty-five pounds and was earning $2.56 per day when injured, while at the time of the trial, nearly a year and a half after the accident, he weighed one hundred and fifteen pounds and was without earning capacity. He sustained both internal and external injuries, by being dragged by the car for the distance of about thirty feet with his left leg over the rail and his body in between the car and the rib of the entryway. His internal injuries were such as to require the administration of hypodermics of morphine to quiet him. He was extremely nervous and depressed and spit blood, and for about two weeks he was expected to die from the internal injuries. The leg was broken close to the hip, and he spent ten weeks in the hospital,

seven weeks in bed, one week in a chair, walked on crutches four months and with two canes two months. At the time of the trial the injured leg was two and a half inches less than normal in length, was affected with progressive atrophy, and, at the point of the fracture, was swollen. He testified that he suffered pain throughout the extent of the limb and continuous pains in the abdominal regions. Three physicians testified as to appellee's condition. One said that when his foot was on the floor the spine tipped with the pelvis to one side, and that threw the spine out of plumb forming a curvature of a little more than an inch. Two said that they found a shortening of the leg, and that the union was not a bony one, and was more likely to break than formerly; that the position of the head of the femur in the acetabulum would give him pain, and that the pelvis would tip as well as the spine column in walking. One physician said that "in walking he throws his hip up and down two and one-half inches on one side, and that is considerable wear and tear to his back and spinal column, at the connection between the pelvis and the spinal column;" that his nervous condition would be influenced, and that he would suffer, and that the condition was permanent unless the bone was broken again.

We however conclude that in view of his age and earning capacity the damages are excessive, and that the verdict should be reduced to $10,500. This opinion will be lodged with the clerk, and counsel notified thereof, and if within five days appellee remits $4,500 of the judgment, it will be affirmed for $10,500 at the costs of appellee, and if not it will be reversed and remanded.

Appellee having filed herein a remittitur of $4,500 the judgment is affirmed for $10,500, at the costs of appellee.

*Affirmed upon remittitur.*