THE HIMROD COAL COMPANY

*v.*

ONIE STEVENS.

*Opinion filed April 24, 1903—Rehearing denied June 4, 1903.*

1. MINES—*provision of the act requiring attendants at principal doors construed.* The provision of clause *f* of section 19 of the Mines act requiring that at all principal doorways through which cars are hauled an attendant shall be employed to open and close the doors when trips of cars are passing, is not intended only as a safeguard to ventilation, but to protect car drivers against collisions.

2. SAME—*whether doorway was a principal one is a question of fact.* Whether the doorway at which an injury from collision occurred was a principal or subordinate doorway is a question of fact, upon which the judgment of the Appellate Court is conclusive.

*Himrod Coal Co.* v. *Stevens,* 104 Ill. App. 639, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. F. BOOKWALTER, Judge, presiding.

ALEXANDER CLARK, for appellant.

GEORGE T. BUCKINGHAM, and C. H. BECKWITH, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

In the mine of the Himrod Coal Company there is a main entry leading south-east from the bottom of the shaft. Turning off from this south-east entry on the east

side and substantially at right angles with it, there were, at the time of the occurrence which gave rise to this suit, successive side entries.    The third and fourth of these side entries were parallel and separated by a wall of coal about twenty feet wide.    Tracks were laid in the entries and coal was hauled out in cars loaded by the miners in the rooms on the entries, and drawn by mules to the main entry and along the main entry to the shaft.    The track in side entry No. 4 did not extend to the main entry, but at a short distance from it turned through a cross-cut in the wall of coal and formed a junction with the track in No. 3.    On August 13, 1901, Orela Stevens, husband of appellee, was the mule driver in entry No. 3 and William Lyons was the mule driver in entry No. 4, and they rode on the coal cars. There was a door in the cross-cut, about six feet square, near the junction of the two tracks.    Stevens was driving a mule with a car along the track in the third entry toward the main entry when Lyons was driving along the fourth entry and through the cross-cut to the junction in the third entry.    There was quite an incline running down to the door and the junction, and Lyons put a sprag in the wheel of his car and came down that incline, through the cross-cut, at a speed of about eight miles an hour, with his mule on the run as fast as he could go.    The door swung each way and closed automatically, and the custom was for the mule to push it open with his nose and pass through, when it would close after the car.    On this occasion the mule pushed the door open with his nose as usual, going through on a run, just as Stevens was at the junction, and there was a collision, in which Stevens was thrown off and injured so that he died from the effects four days later.    There was no attendant at the door, and appellee brought this suit in the circuit court of Vermilion county against appellant to recover damages for the death of her husband, under the statute requiring an attendant at principal doors for the purpose of opening and closing them.    She recovered

a judgment, which has been affirmed by the Appellate Court.

At the close of the evidence the defendant requested the court to give an instruction directing a verdict in its favor, and the motion having been denied and a verdict for plaintiff returned, the defendant moved in arrest of judgment. That motion was also denied by the court, and these rulings are assigned as error and raise substantially the same question. It is contended that the declaration did not allege facts constituting a breach of the statute on which the action was based and was fatally defective for that reason, and that the proof did not show a breach of the statute, and therefore both motions should have been sustained. The position assumed is, that the purpose of the statute is merely to provide safeguards for miners in respect to ventilation; that the sole object of requiring attendants at principal doors is to assist in ventilation and protect miners against gases and impure air, and not to protect them against the danger of collisions, and that some incidental injury, other than from lack of ventilation, resulting from a failure to comply with the requirement, will not constitute a breach of the statute. On the other hand, it is conceded by counsel that unless one of the purposes of the statute was to protect miners against the danger of collisions, neither the declaration nor the proof shows a cause of action based upon the statute, but they insist that such was one of the purposes of the provision.

The declaration stated the facts as detailed above and described the door as a principal doorway of the mine, and charged that it was the duty of the defendant, by virtue of the statute, to employ and have an attendant at said door for the purpose of opening it when trips of cars were passing through, so that the driver might hear and otherwise be warned of the approach of other trips beyond said door, and it charged a willful violation of the statute. The meaning of the legislature is to

be determined by the provisions of the statute which is entitled "An act to revise the laws in relation to coal mines and subjects relating thereto, and providing for the health and safety of persons employed therein." (Hurd's Stat. 1901, p. 1202.) This act was passed in obedience to the command of the constitution, and section 19 provides: "Throughout every coal mine there shall be maintained currents of fresh air sufficient for the health and safety of all men and animals employed therein and such ventilation shall be produced by a 'fan, or some other artificial means." Clauses "*e*" and "*f*" of that section are as follows: "(*e*) All permanent doors in mines used in guiding and directing the ventilating currents shall be so hung and adjusted as to close automatically. (*f*) At all principal doorways, through which cars are hauled, an attendant shall be employed for the purpose of opening and closing said doors when trips of cars are passing to and from the workings. Places for shelter shall be provided at such doorways to protect the attendants from being injured by the cars while attending to their duties."

The principal purpose of the section is to provide for ventilation, and doors are necessary to guide and direct the current. It is argued that where the current of air is strong, doors cannot be made to swing both ways, but must shut against a jamb and must be pushed open against the current, so that an attendant must be provided to open the door, but where the current is not strong the door may swing both ways and a mule can push it open, and after passing through it will swing back into place. Counsel says that for this reason attendants are required at principal doors on the main current to open and close them quickly, so as to keep the air flowing constantly in the same direction and secure ventilation. It will be noticed that clause "*e*" provides that all permanent doors used in guiding and directing the ventilating currents shall close automatically, and ac-

cording to this theory the force of the main current would close them very quickly without an attendant. But whatever the fact may be in that respect, it is apparent that the existence of the necessary doors creates a source of danger to those who are driving on cars. The provision is, that there shall be an attendant in charge of each principal door, whose duty it shall be to open and close it, for the purpose of allowing trips of cars to pass through, and, presumably, to open it at proper times and with proper and suitable precautions for that purpose. It could not have been intended that a person stationed at a door to open and close it for the passage of cars would open it at improper times, when collisions with other cars would probably result. The presence of an attendant performing his duty as required by the statute would tend to secure the safety of the driver, and in view of the danger it seems to us fairly within the purpose of the act to provide against dangers resulting from the existence of the necessary obstructions in the form of doors. It could not have been in the contemplation of the legislature that the attendant would push the door open whenever a car came along the track, regardless of consequences and without the exercise of any care. We think the declaration was properly based on the statute. As a matter of fact, if there had been an attendant at the door properly performing his duties the accident would not have occurred, and the evidence was, that when there was no attendant the only safe way was to stop the car and go forward and look through the door to see whether any one was coming on the other track. It must be presumed that an attendant stationed at the door to open it would have performed that duty.

The principal controversy at the trial was as to the question whether this door was a principal door, within the meaning of the statute, or a subordinate door. The evidence for the plaintiff was that principal doors were those through which there was considerable travel; that

all doors which were much used were principal doors, and that this door was of that character. The evidence for the defendant was that the character of a door as a principal or subordinate door is determined by the current of air; that a principal door is a door on an entry where there is a main current, before it has been divided and subdivided, and that this was not a principal door. This was a question of fact settled by the judgment of the Appellate Court.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*