JOHN KARKOWSKI, Defendant in Error, *vs.* THE LaSALLE COUNTY CARBON COAL COMPANY, Plaintiff in Error.

*Opinion filed December 21, 1910—Rehearing denied Feb. 10, 1911.*

1. MINES—*safety of drivers is included in purpose of statute requiring attendants at principal doorways.* While the principal purpose of section 19 of the Mines and Miners act is to provide for the ventilation of the mine, yet the requirement of clause "*f*" that there shall be an attendant at all "principal doorways" is not designed solely for protection against injuries arising from improper ventilation, but also to secure the safety of drivers from dangers resulting from the existence of the doors.

2. SAME—*what doorways are included within term "principal doorways."* The term "principal doorways," as used in clause "*f*" of section 19 of the Mines and Miners act, includes any doorway which is essential to the ventilation of any portion of the face of the coal where miners are at work and which is in frequent, regular and habitual use for the hauling of cars while coal is being mined.

3. SAME—*whether a doorway is a principal one is to be determined by the jury.* Whether a particular doorway in a mine is a principal doorway within the meaning of the statute is to be determined by the jury from the office the doorway performs and not from the opinions of witnesses; but the fact that such opinions are asked for and given is not necessarily harmful.

4. SAME—*fact that mine owner did not think a certain doorway was a principal one is no excuse.* Failure of a mine owner to employ an attendant to open and close a certain door in the mine which is necessary for the ventilation of a portion of the face of the coal where miners are at work is a willful violation of the provision of the statute in that regard, even though the owner believed, in good faith, that such doorway was not a principal one within the meaning of the statute.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

MCDOUGALL, CHAPMAN & BAYNE, and WALTER A. PANNECK, for plaintiff in error.

DUNCAN, DOYLE & O'CONOR, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The defendant in error recovered a judgment against the plaintiff in error, which was affirmed by the Appellate Court for the Second District, and the record has been brought here by writ of *certiorari* for review.

The cause of action was for personal injuries received in the coal mine of the plaintiff in error, and was based upon its alleged willful failure to have an attendant at a certain principal doorway in the mine for the purpose of opening and closing the door, whereby the defendant in error, while passing along the entry in the discharge of his duties, was injured. The defendant in error, a driver in the mine, was driving a trip of loaded cars through the entry. He went down an incline toward the door, which the mule was expected to open by bumping with its head. The door, however, failed to open and the loaded cars came down against the mule, which turned sideways in the entry, catching and crushing the defendant in error. The mule struggled and finally kicked the door open. The defendant fell and was caught under the wheels and received serious injuries. The principal controversy at the trial arose over the question whether the doorway was a principal doorway, at which a trapper was required.

It is insisted that the court erred in not directing a verdict for the defendant, in the admission of evidence and in giving and refusing instructions.

Some description of the mine is necessary to an understanding of the case. Extending east and west from the bottom of the hoisting shaft are two main entries, known as the main east and main west. About 600 feet east of the hoisting shaft an entry known as the main south is turned off of the main east entry, and just east of this point in the main east entry are double doors, whose office is to deflect the current of air into the main south entry. The current is then carried along the main south entry to the face of the coal, being prevented from going up the

side entries off the main south by various doors and sheets. When the air reaches the face of the coal it separates, part going to the east and part to the west, and after passing around the face returns to the shaft through the return airways. The main north entry is turned off the main west about 118 feet west of the hoisting shaft, and just beyond it are doors which deflect the air into the main north entry. About 760 feet north of the main west entry the third west is turned off the main north entry, and about 2785 feet from the main north the seventh north is turned off the third west, and in this seventh north entry, 162 feet from the third west, is the door at which the defendant in error was injured. The effect of this door was to deflect the current of air in the third west entry and to send it around the face of the coal, where miners were at work, for several hundred feet before it reached the return airway. The mine is ventilated by means of a fan on the surface, which draws the air up in the air shaft, with which the return airways in the mine are connected. This causes air to pass down the hoisting shaft to take the place of that drawn out. The amount of air which passes down the hoisting shaft is about 50,000 cubic feet a minute. The current divides at the bottom, going to the east and the west, and by means of the doors is directed to the different parts of the mine. The amount of air passing up the third west entry is about 3500 cubic feet a minute.

Clause "*f*" of section 19 of the Mining act provides that at all principal doorways through which cars are hauled an attendant shall be employed for the purpose of opening and closing said doors when trips of cars are passing to and from the workings, and section 33 gives a right of action for any injury occasioned by a willful failure to comply with any of the provisions of the act. We have held that while the principal purpose of section 19 is to provide for the ventilation of the mine, the requirement of an attendant at all principal doorways is not designed solely

for protection against injuries arising from improper ventilation, but also to secure the safety of drivers from dangers resulting from the existence of the doors. (*Himrod Coal Co.* v. *Stevens,* 203 Ill. 115; *Madison Coal Co.* v. *Hayes,* 215 id. 625.) We also held that it was a question of fact whether a particular doorway was a principal doorway. The plaintiff in error contends that the principal doorways are only those which control the main current of air before it has been subdivided. Under this construction only the doorways east and west of the hoisting shaft which direct the current to the north and south main entries would be regarded as principal doorways. That the meaning of the term is not thus restricted is manifest from the cases cited. In the *Stevens case* the doorway was in a cross-cut between the third and fourth parallel entries turned off the main entry and separated by a wall of coal about twenty feet thick, and its purpose was to force the air further up the third entry to another cross-cut provided to take it into the upper part of the fourth entry. It did not control the main current and served only a small portion of the mine. The same may be said of the doorway in the *Hayes case.* Without attempting a definition of the term "principal doorways," it may be said that any doorway is a principal doorway, within the meaning of the act, which is essential to the ventilation of any portion of the face of the coal where miners are at work and which is in frequent, regular and habitual use for the hauling of cars while coal is being mined.

Opinions of many witnesses on both sides were permitted to be given to the jury as to whether this was a principal doorway. On cross-examination of the witnesses for the plaintiff in error the defendant in error was permitted to ask them if this was not the principal doorway for that part of the mine, and what doorway first guided the air current on the side of the mine where the defendant in error was injured. It is insisted that there was error

in this. Whether or not the doorway was a principal doorway was a question of fact, to be determined by the jury from the office it performed and not from the opinions of witnesses. It was proper to show the quantity of the air current and the various doors by which it was guided, including the door in question. It was not proper to ask a witness whether this was a principal doorway, for that was a fact to be determined by the jury from the evidence, under the instructions of the court.

It is insisted that there was no willful violation of the statute because the plaintiff in error in good faith believed the doorway was not a principal doorway. The plaintiff in error was, however, acquainted with all the facts. It was charged with knowledge that the door was necessary for the ventilation of a portion of the face of the coal where miners were at work. It cannot be heard to say that it was mistaken as to the law, and its failure to provide a trapper under such circumstances must be regarded as willful.

The court, at the request of the plaintiff, gave the following instruction to the jury:

"At the time in question there was in force in this State a provision of law in reference to coal mines in words as follows: 'At all principal doorways through which cars are hauled an attendant shall be employed for the purpose of opening and closing said doors when trips of cars are passing to and from the workings,' and although you may believe, from the evidence, that before and at the time of the occurrence in question the plaintiff was negligent in not refusing to drive his trip through the doorway in question, or in not quitting the employment so as to avoid having to pass through the doorway in question, or that at the time of the occurrence in question he was not exercising ordinary care for his safety, nevertheless, if you believe, from the evidence, that he was injured at the time and place in question as alleged in the declaration and

thereby sustained damages as stated in the declaration, and that said injury and damage were occasioned by the willful failure on the part of the defendant to comply with the foregoing provision of law above set forth in this instruction, then you should find the defendant guilty and assess the plaintiff's damages in the matter stated in these instructions."

"The willful failure on the part of the defendant to comply with the foregoing provision of law above set forth in this instruction" refers to a failure to furnish an attendant at "all principal doorways," and the other instructions make the meaning clear, so that the jury could not have been misled. They were told that they should regard the instructions as a connected series and apply them to the facts as a whole and not separate in their minds any instruction from the others. They were then told, in three separate instructions asked by the plaintiff in error, that if the doorway in question was not a principal doorway the law would not require an attendant at such door and the jury should find defendant not guilty; that the defendant was not required to keep a trapper at the doorway at or near which the plaintiff was injured unless the jury believe, from the greater weight of the evidence, that the doorway in question was a principal doorway, and that before they could find a verdict for the plaintiff they must believe, from a preponderance of the evidence, that the doorway at or near which he was injured was a principal doorway. With these instructions the jury could not fail to understand that the vital question in the case was whether or not the doorway in question was a principal doorway and that that question was submitted to them for determination.

Instruction 32 was properly refused because it referred to the burden of proof as to negligence when the cause of action was not founded on negligence, as the jury were told in the first instruction given them at the request of

the plaintiff in error. Instruction 33 stated that the word "principal" means a thing of first or prime importance. This information would have been of no value to the jury in determining the issue. Instruction 34 was based on the theory that principal doorways are concerned only with the main current of air, and instruction 36 on the theory of the good faith of plaintiff in error. Both were properly refused.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*