## William H. Stone, Appellee, v. Donk Brothers Coal & Coke Company, Appellant.

1. APPEAL AND ERROR, § 1410*—*when sufficiency of evidence to sustain finding only question on appeal.* Where on appeal an assignment of error raises a question of fact, the only question to be decided by the reviewing court is whether the finding is against the manifest weight of the evidence.

2. MINES AND MINERALS, § 176*—*when evidence sufficient to sustain finding as to unsafe condition of entry to mine.* In an action by a miner to recover for personal injuries, where it was alleged that owing to the negligence of defendant in failing to sprinkle the entry where plaintiff was driving a car at the time of the accident, the dust raised by the car prevented plaintiff from seeing exactly where he was, and caused him to jump off the car on a curve in such fashion as to strike the side of the entry and be thrown under the car and run over, plaintiff's evidence examined and *held* to warrant the conclusion that at the time of the accident an unsafe condition existed in the entry.

3. MINES AND MINERALS, § 179*—*when evidence sufficient to support finding for plaintiff as to cause of injury.* In an action by a miner to recover for personal injuries where it was alleged that owing to the negligence of defendant in failing to sprinkle the entry where plaintiff was driving a car at the time of the accident, as required by statute, the dust raised by the car prevented plaintiff from seeing exactly where he was and caused him to jump off the car on a curve in such fashion as to fall against the side of the entry and to be thrown under the car and run over, a finding for plaintiff *held* supported by a clear preponderance of the evidence.

4. MINES AND MINERALS, § 41*—*how Miners' Act construed.* Recent cases give a somewhat more liberal construction to the Miners' Act (J. & A. ¶ 7475 *et seq.*) than did the earlier cases.

5. MINES AND MINERALS, § 148*—*when evidence sufficient to sustain declaration.* In an action to recover for personal injuries sustained by a miner while driving a car in defendant's mine, where the declaration charged that an unsafe condition existed in the entry where plaintiff was driving at the time of the accident, and that plaintiff was allowed to enter the same for work otherwise than under the direction of the mine manager, evidence *held* sufficient to sustain the declaration.

6. MINES AND MINERALS, § 86*—*when mine owner liable for negligence of mine examiner.* Hurd's Rev. St. 1909, ch. 93, sec. 18,

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Stone v. Donk Brothers Coal & Coke Co., 199 Ill. App. 64.

prescribing the duties of mine examiners, clearly contemplates that the mine owner shall keep his mine in a safe condition to protect the men employed by him therein from injury, so that a wilful failure of such examiner to make the examination and reports required by the section, if resulting in injury to miners, renders the mine owner liable therefor.

7. MINES AND MINERALS, § 85*—*when failure of mine examiner to report dangerous condition of mine immaterial.* Where a dangerous condition exists in a mine and is known to the mine examiner, it is unimportant, in so far as the liability of the mine owner for injury caused thereby is concerned, whether the mine examiner reports such condition to the mine manager, since under the Miners' Act (J. & A. ¶ 7475 *et seq.*) the mine examiner is a vice principal of the mine owner.

8. MINES AND MINERALS, § 114*—*who is vice principal.* A mine examiner is a vice principal of the mine owner.

9. MINES AND MINERALS, § 182*—*when question of dangerous condition of entry to mine for jury.* In an action by a miner to recover for personal injuries sustained as a result of the alleged negligence of defendant in permitting a dangerous condition to exist in an entry of the mine, the question of the condition of such entry at the point where the accident occurred is a question of fact for the jury.

10. MINES AND MINERALS, § 84*—*when permitting of employee to work wilful violation of Miners' Act.* To permit a miner to enter a mine to work therein otherwise than under the direction of the mine manager, while a dangerous condition is known to exist therein, and before such dangerous condition is made safe, is a conscious violation of Hurd's Rev. St. 1909, ch. 93, sec. 18, prescribing the duties of mine examiners, and renders the mine owner liable for a wilful violation of the act.

11. NEGLIGENCE, § 53*—*when person liable for injury proceeding from two causes.* Where an injury proceeds from two causes operating together, the parties putting in motion one of them is liable therefor as though it were the sole cause.

12. NEGLIGENCE, § 53*—*what constitutes proximate cause.* To be the proximate cause of an event, a negligent act or omission need not be the sole cause or the last or nearest cause, it being sufficient if such act concurs with the other causes acting at the same time, which in combination with it causes the injury.

13. NEGLIGENCE, § 196*—*when proximate cause question for jury.* What is the proximate cause of an event is ordinarily a question of fact for the jury.

14. NEGLIGENCE, § 48*—*what constitutes proximate cause.* A cause may be the proximate cause of an injury, so as to render

*See **Illinois Notes Digest**, Vols. XI to XV, and **Cumulative Quarterly**, same topic and section number.
Vol. CXCIX 5

defendant liable, if it be one of the causes, though not the only cause, of the injury, but without which the accident would not have happened.

15. MINES AND MINERALS, § 80*—*when mine owner liable for permitting employee to enter unsafe place.* In an action by a miner for personal injuries, it is proper to refuse to hold a proposition that Hurd's Rev. St. 1909, ch. 93, sec. 18, providing that miners shall not be permitted to enter dangerous places in a mine until the same are made safe, except under the direction of the mine manager, has no application to a dusty road in a coal mine except in so far as the question of explosions is concerned, where the declaration charges that an unsafe condition existed in the mine at the time of the accident and where the dusty condition of the mine was one of the elements which went to make up the unsafe condition charged.

16. MINES AND MINERALS, § 125*—*when contributory negligence no defense.* Under the Miners' Act (J. & A. ¶ 7475 *et seq.*) contributory negligence is eliminated where a wilful violation of the statute is alleged and proved.

Appeal from the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding. Heard in this court at the March term, 1915. Affirmed. Opinion filed April 17, 1916.

KEEFE & SULLIVAN, for appellant.

T. M. WEBB and M. LESTER GEERS, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

Appellee was injured on June 18, 1910, while employed as driver in the mine of appellant at Maryville, Illinois. The declaration consists of two counts. The first count is based upon section 18 of chapter 93 of Hurd's Revised Statutes for 1909, and the second count is based on section 16 of said Act.

The first count charges, among other things, that the track on which appellee was driving had curves, and that slate and other materials were allowed to accumulate along the side of the track and that a vast quantity of dust accumulated and was allowed to remain along and on the side of the roadway, which was

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

frequently stirred up by the mule and trip of cars, so as to fill the passageway, and by reason thereof the vision of the driver was obscured while hauling coal therein. Appellee bases his right to recover on the presence of all the foregoing conditions, and it is charged in said counts that all of said materials constituted a dangerous and unsafe condition of which the appellant well knew. It is also charged in said count that appellant wilfully permitted appellee to enter said working place without being under the direction of the mine manager before said dangerous condition was made safe.

The second count charges the presence of large quantities of dust along said roadway which rendered the passage of the drivers thereon unsafe and dangerous; that appellant knew of said condition, and that it wilfully failed to cause said track to be sprinkled. The gist of this count is the wilful omission on the part of appellee to see that the track was sprinkled as provided by statute. To said declaration appellant pleaded the general issue. By agreement trial was had by the court without a jury, resulting in a finding and judgment in favor of appellee for $1,800, from which judgment appellant prosecutes this appeal.

There were twelve or more entries, numbered from one to twelve, developed westerly off the main south entry of said mine. Near the point where the eighth entry turned westward off the main south, the latter entry branches into two parts, the said parts coming together again near the mouth of the tenth west entry. Each of said branches contain a track over which cars were hauled. The east branch was used to store empty cars. The west branch was used for storing loaded cars of coal brought in by the drivers in the south side and from thence were pulled by a motor to the bottom shaft to be hoisted. These two branches were known as the "parting" and were separated by a pillar of coal having an opening of sufficient size to permit a

driver and mule to pass from one side to another. The loaded cars were delivered by the drivers on the west branch as they came northerly on the main south. Just north of the tenth west entry stands a trapdoor across the track of the main south. North of the trapdoor the loaded track branches to the west and continues northerly until it again intersects the main line in the main south entry.

From the trapdoor along the left side of the west track as it goes north there were certain timbers sitting close to the rail, and in and about the base of these timbers and near the rail itself was an accumulation of slate and other materials. After leaving the ''parting'' on the west track where the loaded cars were run you come to a considerable curve. The exact distance of this curve from said ''parting'' is not definitely shown by the record. From this point on north the track declines. At about the point of the curve above mentioned the drivers of the cars unhook their mules and run them north some thirty or forty feet to the cross-cut where the mules would turn in and go through to the other track where the empty cars were stored.

Appellant in its brief alleges two grounds for a reversal of this case: ''First, because as a matter of fact his (appellee's) injury was due entirely to the fact that he undertook to leave the car on the wrong side and contrary to the method always employed by him and other drivers before his injury; and second, the injury which he received was not the direct and proximate result of any dust which had accumulated in the entry.'' Appellant's first proposition raises a question of fact, and the only matter to be determined by the court on this proposition is whether the finding of the court was against the manifest weight of the evidence. Appellee is the only witness who testified as to the manner in which the accident occurred.

His testimony is to the effect that about ten o'clock

on the morning in question, he had brought a load of coal in from this "parting" and on arriving at said decline, he unhooked his mule and jumped off the car, intending to alight in the middle of the track; that his vision was so obscured by the dust caused by the trotting of the mule and the trip of cars that he was unable to see or appreciate at what point in the entry he was; that as he jumped, his car happened to be on the curve, and as a result thereof, instead of jumping in the middle of the track, he landed on the left side of the same against the timbers and gob above mentioned and was thereby thrown back onto the center of the track and was run over by said car. Appellee's evidence further tended to show that for the want of sprinkling in said entry, dust had accumulated in such quantities between the rails that it reached the axles of the cars, except in the center of the track where the mules had beaten a path, and that the passing of the car and mule stirred up vast quantities of dust and so befogged the atmosphere as to render it impossible to see. Appellee further testified that on the right-hand side of the track, going north, the average distance between the rib and the side of the car was only about fifteen or sixteen inches.

As to the dusty condition of the mine, appellee is corroborated by Drake, an ex-mine examiner who was in the employ of appellant as such mine examiner at the time of the accident. This witness further corroborated appellee with reference to the timber and materials on the left side of the track at the curve where the accident occurred. His testimony being that: "To the left of the curve going north there was timber and loose debris at the time and was there as long as I was employed in the mine." He further testified that he reported the condition of this entry when he was first employed by appellant and that the condition of the road was unchanged up to the time of the accident. This witness also testified that in going

north, on the right-hand side, the coal was overhanging and that while there were some clear spaces on the right-hand side of the track there was not enough room for a mule to be unhooked and pass between a car and the rib down to the cross-cut. Mr. Weschenske, a witness on behalf of appellee, being the man in charge of the electric motor for appellant in its said mine, corroborated appellee with reference to the dusty condition of said entry and also testified that this entry was not sprinkled south of the cross-cut during the month of June; that the dust was so deep that in walking along the entry it would come to the top of his shoes. The witness Kettle, a spragger in said entry at the time of the accident, corroborated appellee with reference to the dusty condition of the entry. This witness also testified that he was in the cross-cut at the time appellee was hurt; that at this point there was a sharp curve in the track and that the gob and material came down to the rail. He further stated that this condition in said entry had obtained since the first of April. This is the substance of appellee's evidence, and we think, fully warranted the conclusion that at the time of the accident these different conditions testified to by appellee's witnesses rendered an unsafe condition in said entry.

The only evidence offered by appellant to contradict the evidence offered by appellee consisted of the testimony of Needler, a civil engineer, to the effect that there was three and one-half feet on the east side of the loaded track going north; and that there was some dust on the track, probably an inch or two, but not sufficient to call his attention to the same. This witness testified he knew this parting had been sprinkled many times, but on cross-examination he said: "I do not know of my own personal knowledge when this parting was sprinkled prior to the accident." Polleyshek, mine manager for appellant, at the time of the accident, stated that he was acquainted with the conditions

of the entry prior to the injury; that he had walked along this track but had not noticed any particular amount of dust; that this loaded track was sprinkled every Sunday night; that he directed the night foreman to have it done.  No witness, however, was put on who testified to having sprinkled the mine or who had personal knowledge that the mine was sprinkled on any particular occasion.

The witness McCormack, boss driver for appellant at the time of the injury, testified: "It was a system to sprinkle there during that time."  He further testified:  "I don't recollect whether this roadway had been sprinkled during the month or not."  This witness testified he helped pull appellee from under the car at the time of the injury; that the condition of dust was not such at that time as one with ordinary eyesight could not see a few feet ahead of him.  This is the substance of the testimony of appellant with reference to the dust, sprinkling and other conditions of the mine at the time of the accident.

There is absolutely no evidence in the record to support appellant's proposition to the effect that appellee had been in the habit of getting off of the car on the right-hand side of the track.  The only testimony as to the habit of appellee with reference to getting off of the car was the testimony of appellee to the effect that he jumped off the front of the car, drove the mule down the center of the track until he came to the cross-cut and that, that was what he was attempting to do at the time he received his injury.  The evidence further shows that appellee had been working in this entry but one day prior to the day of the injury. The finding of the court in our judgment is not against the manifest weight of the evidence as to the manner in which appellee received his injury and as to the unsafe condition of the mine, but is supported by a clear preponderance thereof.

It is next contended by appellant that even though

appellee received his injury in the manner claimed by him, said injury was not the proximate result of any dust which had accumulated in the entry.

The point sought to be made by appellant is that the statute with reference to sprinkling, being section 16d of chapter 93, of Hurd's Revised Statutes of 1909, relates only to the prevention of explosions on account of the accumulation of dust in the mines, and that even though an injury occurs, caused in part by reason of the dusty condition of the mine and the failure to sprinkle as provided by statute, it would not in law be held as the proximate cause of the injury.

We have examined the cases cited by counsel for appellant in support of his contention and while some of the earlier cases decided by the courts seem to support their position, yet we are inclined to believe that the more recent cases give a somewhat more liberal construction to the language of the provisions of the mining statute than did the earlier cases. *Layman v. Penwell Min. Co.*, 142 Ill. App. 580; *Himrod Coal Co. v. Stevens*, 203 Ill. 115; *Madison Coal Co. v. Hayes*, 215 Ill. 625, and *Hougland v. Avery Coal & Mining Co.*, 246 Ill. 609.

We do not, however, rest our decision of this case on the construction to be placed on the provision in clause "d" of section 16 of the Mining Statute, to the effect that in dusty mines, the mine manager must see that all hauling roads are frequently and thoroughly sprinkled, but rest our decision on the case made by the first count of appellee's declaration, which charged facts showing, an unsafe condition in the entry and that appellee was allowed to enter the same for work, otherwise than under the direction of the mine manager. The evidence in the record is amply sufficient to sustain the allegations of said count.

The case of *Olson v. Kelly Coal Co.*, 236 Ill. 502, is a somewhat similar case to this. In that case the declaration charged facts showing an unsafe condition

in the mine entry where Olson was to do his work, and that while working in said entry he received the injury for which suit was brought. The court at page 505 says: "It is also contended that the court erred in overruling appellant's motion for a directed verdict, as it is said that the evidence does not show a wilful violation of the provisions of section 18 of the Mines and Mining Act, the position of appellant being, that the only evidence of a wilful violation of said section 18 contemplated by the statute is the report of the mine examiner,—in other words, that the suit being based upon a violation of section 18 of the Mines and Mining Act, actual notice of the dangerous condition in the mine to its mine examiner was not sufficient notice of such condition to appellant to make it liable under that section of the statute for an injury resulting from such dangerous condition. We do not agree with this contention. The statute clearly contemplates that the mine owner shall keep his mine in a safe condition to protect the men employed by him therein from injury, and to this end it is provided that a mine examiner and a mine manager shall be employed, and that the mine shall be examined and reports of its condition as disclosed by such examination made, and that a wilful failure to make such examination or report, which results in injury to men working in a mine, shall make the mine owner liable for such injury."

In the case at bar, Drake, the mine examiner, reported the condition of the mine as it existed prior to the injury to appellee, to the mine manager and he further testified that its condition remained the same and unchanged up until after appellee's injury. Whether he reported its condition to the mine manager or not is unimportant as under the holding of the Supreme Court of this State a mine examiner is vice principal of the mine owner. *Olson v. Kelly Coal Co., supra; Davis v. Illinois Collieries Co.*, 232 Ill. 284.

The court further says in *Olson v. Kelly Coal Co.*,

at page 506: "The question of the condition of the entry at the point where the accident occurred was one of fact to be determined by the jury." If, as charged in the declaration, appellant permitted appellee to enter its mine to work therein, otherwise than under the direction of its mine manager, knowing of such dangerous condition, before said dangerous condition had been made safe, such conduct on its part constituted on the part of the appellant a conscious violation of section 18 of the Mines and Mining Act and rendered appellant liable to the appellee for a wilful violation of said act. *Olson v. Kelly Coal Co., supra; Odin Coal Co. v. Denman,* 185 Ill. 413; *Marquette Third Vein Coal Co. v. Dielie,* 208 Ill. 116; *Kellyville Coal Co. v. Strine,* 217 Ill. 516; *Henrietta Coal Co. v. Martin,* 221 Ill. 460; *Eldorado Coal & Coke Co. v. Swan,* 227 Ill. 586.

It is also appellant's contention that the evidence does not show the condition of the entry was the proximate cause of appellee's injury. We think it cannot be seriously urged that the entry where appellee received his injury was not in an unsafe and dangerous condition substantially as alleged in his declaration. When an injury proceeds from two causes operating together, the parties putting in motion one of them is liable therefor the same as though it was the sole cause. The negligent act or omission must be one of the essential causes producing the injury but need not be the sole cause nor the last or nearest cause. It is sufficient if it concurs with the other cause acting at the same time, which in combination with it causes the injury. *Waschow v. Kelly Coal Co.,* 245 Ill. 516; *Seith v. Commonwealth Electric Co.,* 241 Ill. 252; *Miller v. Kelly Coal Co.,* 239 Ill. 626. What is the proximate cause is ordinarily a question of fact to be considered by the jury. *Illinois Cent. R. Co. v. Siler,* 229 Ill. 390; *Pullman Palace Car Co. v. Laack,* 143 Ill. 242. Under the above authorities if the unsafe condition of appel-

lant's mine was one of the causes, although not the only cause, which resulted in appellee's injury, but without which cause the accident would not have happened, appellant would be liable.

No question is made by appellant as to the amount of the verdict. The evidence discloses that the injuries to appellee were severe, consisting of an injury to his back, hip, ankle and wrist, from which injuries he was confined to his home for about ten weeks.

Seven propositions of law were submitted by appellant, all of which were held by the court with the exception of the sixth and seventh. The sixth proposition was to the effect that appellant was not negligent in permitting appellee to enter for work without being under the direction of appellant's mine manager. There was no error in refusing this proposition, and what we have heretofore said and the authorities we have cited is a complete answer to appellant's contention that there was error in refusing the same.

The seventh proposition was to the effect that the statute directing that miners shall not be permitted to enter dangerous places in a mine until the same are made safe, except under the direction of the mine manager, has no application to a dusty road in a coal mine, except so far as the questions of explosions is concerned. We think there was no error in refusing this proposition for the reason that the dusty condition of the mine was one of the conditions that went to make up an unsafe condition as set forth in the first count of appellee's declaration. The question of contributory negligence on the part of appellee does not arise in this case for the reason that the evidence is amply sufficient to establish the allegation of the first count of appellee's declaration to the effect that a dangerous condition existed in appellant's mine where appellee was injured; that said dangerous condition was known to appellant, and that, notwithstanding said knowledge it suffered appellee to enter said mine for work, other-

wise than under the direction of its mine manager, rendering the act of appellant wilful and thereby eliminating the question of contributory negligence on the part of appellee.

Finding no reversible error in this record the judgment of the Circuit Court will be affirmed.

*Judgment affirmed.*